In re MARRIAGE OF JULIE A. PERINO, Petitioner-Appellee, and SYLVANIO L. PERINO, Respondent-Appellant.

Third District   No. 3—91—0321

Opinion filed February 4, 1992.

Rolfe F. Ehrmann, of Ehrmann, Gehlbach & Beckman, of Dixon, for appellant.

Lon M. Richey, of Nelson, Kilgus, Richey & Hauptman, of Morrison, for appellee.

JUSTICE HAASE delivered the opinion of the court:

The respondent, Sylvanio L. Perino, appeals the distribution of property following his divorce from the petitioner, Julie A. Perino. We affirm.

The record shows that Julie filed for divorce on March 22, 1990. A hearing was later held on the issues of child support and distribution of marital property. At the hearing, Julie testified that she married Sylvanio in 1980. Around that time, Sylvanio stopped attending college and began farming. They initially owned no land or farm machinery.

Julie further stated that while she was married, she worked as an Eagle's check-out clerk. Her approximate wages were as follows: $17,500 in 1987; $15,000 in 1988; $18,000 in 1989; and $21,000 in 1990. The cash value of her pension was $2,137.62.

Julie said that during the course of their marriage, the parties had two children. One was age seven and the other was age eight. Julie was 33 years old at the time of the hearing.

Lastly, Julie testified that Sylvanio and his brother presently ran two farming operations, Perino Brothers Farms and Rock River Farms. Sylvanio made most of the decisions for the businesses. Julie said he had excellent knowledge of agricultural finance and marketing.

Larry Meyers testified that as a credit manager for Whiteside FS, he made decisions about financing farm operations and collecting debts. During the past three years, his employer and another bank had financed Sylvanio's businesses. He had relied on a financial statement included in the pretrial memorandum in extending credit to Sylvanio. That statement indicated that the net worth of Perino Brothers Farms on a modified cost basis was $110,005, and the net

worth on a market value basis was $232,414. He testified that market value was supposed to represent the price the farmer thought he would get if he sold the business.

Meyers stated that the values in the statement were slightly inflated. He said this was partly due to the low price of corn, which was between $2.35 and $2.40 a bushel. If the price rose to $2.60 a bushel, the listed value of the grain inventory would be accurate.

Meyers noted that the net worth of the operation had shown little increase in the past three years. He attributed this to the fact that the operation's assets consisted mostly of machinery, which constantly depreciated. The machinery would be difficult to sell because it was large and specialized.

Meyers said Sylvanio and his brother were competent farmers who sometimes marketed their crops well. This year, however, they had lost $25,000 in the grain market and had not yet sold their corn crop. They presently owed his employer $214,000.

Sylvanio testified that in 1990 his pay was $1,600 a month. In the last three years, his net personal income had averaged in the middle to high teens. He also sustained an $83,000 business loss in 1990.

Sylvanio said that through his businesses he had farmed about 3,500 acres in 1990. All of the land had been leased to his businesses. The assets of his businesses consisted mainly of grain and machinery. The machinery had to be replaced frequently because of the amount of acreage he farmed. Additionally, it rapidly depreciated in value.

Sylvanio stated that Rock River Farms had been created to take advantage of Federal agricultural programs. Perino Brothers Farms was the more active operation. On December 14, 1990, Sylvanio had prepared a balance sheet for Perino Brothers Farms, which he later delivered to the First of America Bank. He admitted that the balance sheet showed the approximate financial state of the business. The balance sheet indicated that the market value of the assets was $819,427, and the market value of the liabilities was $587,013.

Sylvanio testified, however, that $83,000 of the machinery listed as an asset was actually leased. The balance sheet also listed a $59,500 liability on the leased machinery. Sylvanio had an option to purchase the equipment at the end of the lease term. He said he was not likely to do so because of the large amount of acreage he farmed.

Sylvanio further stated that the listed value of $385,500 for crops and feed was incorrect. Given market conditions and the present state of the grain, it was actually worth $350,000.

The balance sheet also indicated that the business had loaned $15,000 to Sylvanio's brother. Sylvanio did not know what the purpose of the loan was.

Sylvanio stated that if he attempted to liquidate all or part of his operation, there would be a tax impact which was not reflected on the balance sheet. He estimated that if he sold the operation, he and his brother would have to pay $137,500 in taxes. Taking that into account, he calculated the liquidated value of the business to be $35,914. Of that amount, he would be entitled to $17,957. Additionally, the operation was highly leveraged, so he would not be able to sell the assets without the approval of his creditors.

Sylvanio said that two financial institutions had recently rejected his request for an operating loan. He was unsure as to when he would eventually obtain the loan.

The trial court found that Sylvanio's average net income was $17,000 a year. It therefore ordered him to pay $355 per month in child support. Julie was awarded the household goods, valued at $3,885; the Cougar automobile, valued at $5,500; and her pension plan, valued at $1,463. She also was ordered to assume $11,546 in debts.

Sylvanio received the assets of the farming businesses, valued at $783,927, as well as the liabilities, valued at $587,013. He also assumed a $500 bank debt. In order to equalize the distribution of marital property, Sylvanio was ordered to pay Julie $49,629.50. Of that sum, $9,629.50 was payable in 60 days. The rest was to be paid at an amortized rate over the next seven years. The interest on the unpaid amount was 9% per year.

On appeal, Sylvanio argues that the trial court erred in distributing the marital estate. He contends that the court's decision unfairly imposed on him all the business risks. He further argues that the decision will force him to sell all or part of his businesses.

■■ The trial court's decision on the distribution of property will not be reversed unless the court clearly abused its discretion. (*In re Marriage of Thornqvist* (1979), 79 Ill. App. 3d 791, 399 N.E.2d 176.) We agree with Sylvanio that the court's decision imposed most of the business risks on him. However, Sylvanio will also receive most of the benefits generated by the businesses. Since Sylvanio made most of the business decisions and it is often inadvisable to break up an ongoing business (see *In re Marriage of Rapacz* (1985), 135 Ill. App. 3d 1045, 482 N.E.2d 441), we find that the court properly ordered him to assume the business risks.

Moreover, after Sylvanio pays his debt to Julie, he will retain 75% of the market value of Perino Brothers Farms. Since there will still be substantial equity in the business, we do not believe Sylvanio will be forced to liquidate it. Accordingly, we find no merit to his arguments.

Sylvanio further argues he can only meet the trial court's order by selling assets. He contends that the trial court failed to consider the tax consequences of such a sale. He also argues that if the tax consequences of a complete liquidation are considered, the value of the business was only $35,914.

■ Section 503(d)(11) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 503(d)(11)) states that in dividing marital property, the trial court shall consider the tax consequences upon the parties. However, the consequences that must be considered are those that immediately flow from the court's decision. (*In re Marriage of Emken* (1981), 86 Ill. 2d 164, 427 N.E.2d 125.) Remote consequences or the result of voluntary actions should not be considered. *In re Marriage of Hawkins* (1987), 160 Ill. App. 3d 71, 513 N.E.2d 143; *Emken*, 86 Ill. 2d at 167, 427 N.E.2d at 127.

We note that the business had sufficient equity to make a $15,000 loan to Sylvanio's brother. Consequently, we are not convinced that Sylvanio will have to sell any assets in order to meet the court's order. Even if he has to, the taxes could be paid out of the large share of the business he was awarded. In regard to Sylvanio's argument about the tax consequences of a complete liquidation, we have previously found that the trial court's decision will not force Sylvanio to liquidate the entire business. Consequently, any such tax consequences are purely hypothetical and the result of voluntary action. They are therefore not a proper factor for consideration.

Sylvanio next argues that the court erred in incorporating the value of the machinery in the operation's assets because its value was reflected in the child support order. He cites *In re Marriage of Zells* (1991), 143 Ill. 2d 251, 572 N.E.2d 944, in support of his argument.

■ In *Zells*, the court said that the value of professional goodwill is properly reflected in the maintenance and support awards. Accordingly, it found that it was not a divisible marital asset. In the instant case, by contrast, the machinery was business property acquired in the course of the marriage. Such property is subject to division as part of the marital estate. (Ill. Rev. Stat. 1989, ch. 40, pars. 503(a), (d).) Since we believe *Zells* should be limited to cases involving professional goodwill, we find that the court properly considered the value of the machinery in dividing the estate.

Sylvanio lastly argues that the court erred in considering the $83,000 in leased machinery to be an asset of his business. He contends that only the machinery he owned should have been considered an asset.

The record reflects that Sylvanio listed the machinery as an asset and a liability on the balance sheet he presented to the First of America Bank. Additionally, he testified that he had an option to purchase the equipment at the end of the lease term. Given that option and the presence of the equipment as a net asset on the balance sheet, we find that the court did not err in considering it to be marital property.

The judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

BARRY, P.J., and SLATER, J., concur.