*In re* MARRIAGE OF SUSAN GAIL SAWICKI, Petitioner-Appellee, and TODD MARTIN SAWICKI, Respondent-Appellant.

Third District    No. 3—03—0328

Opinion filed March 18, 2004.

1110

Dawn A. Conolly (argued), of McDonald & Conolly, of Galesburg, for appellant.

Robert B. Steele (argued), of Aplington, Kaufman, McClintock, Steele & Barry, of LaSalle, for appellee.

JUSTICE SLATER delivered the opinion of the court:

The respondent, Todd Martin Sawicki, appeals from the judgment of dissolution of his marriage to the petitioner, Susan Gail Sawicki. On appeal, Todd contends that the trial court erred when it: (1) awarded Susan 50% of the marital portion of his disability pension; (2) calculated the marital share of his disability pension; (3) failed to allocate the cost of the joint and survivor annuity to Susan; (4) failed to reduce any portion of the disability pension awarded to Susan when his supplementary pension terminates; (5) directed a retroactive award of disability benefits to Susan; (6) set child support; and (7) failed to reopen the evidence. For the following reasons, we affirm in part, reverse in part and remand.

## I. FACTS

Susan and Todd were married on July 26, 1985. They had one child during their marriage, a son, T.C., who was born on February 4, 1988. On June 8, 2000, Susan filed a petition for dissolution of marriage. The trial court awarded Susan $500 per month for temporary maintenance and child support.

On June 5, 2002, after protracted litigation, the trial court ruled on custody and visitation issues. It awarded the parties joint legal custody of their son and gave Susan primary physical custody. Todd was awarded extensive visitation rights with his son, including three weekends per month, one evening per week and the majority of the summer months. Todd is not appealing the custody award.

The trial court held additional hearings on the division of property and remaining issues. It was established that Susan was 47 years old and had a ninth-grade education. Before she married Todd, she worked at several minimum wage jobs, including factory work, bartending and as an apprentice painter. She also held a minimum wage job during the early years of her marriage to Todd. When she became pregnant with T.C., she quit her job to stay home. She remained a homemaker for the remainder of the marriage.

Todd was 52 years old at the time of trial. He worked as a construction laborer for 27 years before he was diagnosed with rheumatoid arthritis. His condition has left him physically disabled and unable to perform as a construction laborer. In 1999, he retired from his job with Ladd Construction and began receiving disability benefits. Since that time he has performed odd jobs such as stringing concrete and installing carpet. According to Todd, he can function, although he cannot be a "shovel and ditch guy."

Todd's pension is a defined benefit plan in which the amount of the benefit receivable per month is dependent upon the number of pension credits earned multiplied by the applicable contribution rates. Based upon the pension credits earned by Todd prior to and during his marriage, his disability pension would have paid him $3,702.35 per month. However, on February 1, 2000, Todd elected a 50% joint and survivor annuity for Susan. That annuity reduced the current gross amount payable to $2,795.27 per month. The annuity would provide Susan $1,397.64 per month if Todd predeceases her.

The evidence established that Todd is also entitled to a $300-per-month temporary supplemental benefit which will terminate when he reaches the age of 65 or earlier under certain circumstances. Prior to the entry of the qualified domestic relations order (QDRO), Todd was receiving $3,095.27 per month gross ($2,795.27 + $300). Todd also receives a veteran's pension of $103 per month.

Todd began covered employment under the Central Laborers Pension Fund in 1972, 13 years before he married Susan. He was a participant in the plan for more than 27 years before he began to collect disability benefits. At the time he became disabled, Todd had earned 39.65 pension credits. He had earned 15.25 of those credits prior to his marriage to Susan.

Kevin Mason, a certified public accountant, testified on Susan's behalf regarding the value of the disability pension. According to Mason, 87.6% of the disability pension should be considered marital property. Mason arrived at that figure by using the accrued benefit as of the date of the marriage and comparing it to the accrued benefit at the date of dissolution. Mason testified that 87.6% was a fair value for

the marital portion of the pension because, "as earnings go up, the amount of contributions to the fund in a union-negotiated plan normally increase, so that there would have been more benefit accrued after the date of the marriage than prior." Todd did not have an expert testify as to the value of the marital portion of the pension.

The parties stipulated that all payments on the marital home came from marital income except Todd's initial down payment of $16,920.

In June 2002, prior to closing arguments, Todd's counsel withdrew. Todd continued the case *pro se*. On September 20, 2002, the trial court issued a letter opinion and the judgment of dissolution was entered November 1, 2002. The trial court made the following pertinent rulings: (1) the marital portion of the Central Laborer's Pension Fund was 87.5%[1] of the total value of the pension; (2) Susan was awarded one-half of the marital portion of the pension, which at that time was $1,298.06; (3) Susan's portion of the disability pension was applied retroactively to July 2002; (4) each party was responsible for any tax liability incurred by that party's receipt of any distribution and would hold the other party free, harmless and indemnified from any tax liability so incurred; (5) the marital residence was to be sold and the proceeds split equally between the parties after Todd received $16,920 for his nonmarital contribution; (6) Todd was ordered to pay $354.70 per month child support; (7) child support was retroactive to June 2002; (8) Todd was ordered to maintain medical insurance for T.C.; and (9) the issue of maintenance was reserved by the court. Todd's motions for reconsideration were denied.

## II. ANALYSIS

### A. Division of Marital Property

On appeal, Todd first argues that the trial court abused its discretion in awarding Susan 50% of that marital portion of his disability pension. He claims that an equal distribution of the disability pension is unfair because his disability leaves him unable to pursue gainful employment and he is faced with ever-increasing costs for medical and living expenses.

■ Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that in a dissolution proceeding, the court is to divide the parties' marital property in just proportions considering all relevant factors. 750 ILCS 5/503(d) (West 2000). Those relevant factors include the following: (1) each party's contribution to the

---

[1]Susan's expert testified that the value of the marital portion of the disability pension was 87.6%.

marital estate; (2) the dissipation of martial assets by either party; (3) the value of the property assigned to the spouse; (4) the duration of the marriage; (5) the relevant economic circumstances of each spouse when the division of the property is to become effective; (6) any obligations and rights arising from a prior marriage of either party; (7) any antenuptial agreement of the parties; (8) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties; (9) the custodial provisions for any children; (10) whether the apportionment is in lieu of maintenance; (11) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and (12) the tax consequences of the property division upon the respective economic circumstances of the parties. 750 ILCS 5/503(d) (West 2000).

■ The trial court has broad discretion in the valuation and subsequent distribution of marital assets. *Kew v. Kew*, 198 Ill. App. 3d 61, 555 N.E.2d 731 (1990). An abuse of discretion is said to have occurred only when no reasonable person would take the view adopted by the trial court. *In re Marriage of Courtright*, 229 Ill. App. 3d 1089, 595 N.E.2d 619 (1992).

■ We have reviewed the factors under section 503(d) that are relevant to this case and find that the trial court's decision to award Susan 50% of the portion of Todd's disability pension which it deemed to be marital property was not an abuse of discretion. See 750 ILCS 5/503(d) (West 2000).

Both Susan and Todd contributed equally to the acquisition of marital property in their capacities as homemaker and wage earner. See 750 ILCS 5/503(d)(1) (West 2000); *In re Marriage of Swigers*, 176 Ill. App. 3d 795, 531 N.E.2d 858 (1988) (the parties' contributions to the acquisition of marital property when one spouse is the homemaker and the other spouse is the wage earner can be considered as relatively equal). This is particularly true since Todd and Susan's marriage lasted for 17 years. See 750 ILCS 5/503(d)(4) (West 2000); *In re Marriage of Marriott*, 264 Ill. App. 3d 23, 636 N.E.2d 1141 (1994) (a spouse's greater financial contributions do not necessarily entitle him or her to a greater share of the marital assets, especially in long-term marriages where one spouse is the homemaker).

Also to be considered are the relevant economic circumstances of each spouse when the division of the property is to become effective (750 ILCS 5/503(d)(5) (West 2000)) and the age, health, station, occupation, sources of income, vocational skills and employability of the parties (750 ILCS 5/503(d)(8) (West 2000)). Both parties' circumstances, although different, are relatively equal. Susan is a single mother with a ninth-grade education raising a teenage child. She has

little significant work history as a result of being a homemaker for almost her entire 17-year marriage. Todd, on the other hand, has significant work history as a construction laborer. However, he can no longer work in that field due to his rheumatoid arthritis.

Next, we reviewed the custodial provision for the parties' son, T.C. See 750 ILCS 5/503(d)(9) (West 2000). Susan is the residential custodian of T.C. and therefore needs to provide a home for him. An equal distribution of Todd's pension will allow her to provide housing for T.C. The sale of the marital home also allows Todd to receive his nonmarital contribution reimbursement.

Another relevant factor is whether the apportionment is in lieu of or in addition to maintenance. See 750 ILCS 5/503(d)(10) (West 2000). The trial court did not award Susan maintenance and chose to reserve that issue instead. Without the income from the pension, Susan would be left without income and Todd might be required to pay Susan maintenance.

Finally, we look to the reasonable opportunity of each spouse to acquire future capital assets and income. 750 ILCS 5/503(d)(11) (West 2000). Again, although Todd's and Susan's circumstances are different, their abilities to acquire future capital are relatively the same, based on Susan's lack of education and work experience and Todd's disability.

Todd argues that the cases of In re Marriage of Davis, 286 Ill. App. 3d 1065, 678 N.E.2d 68 (1997), and In re Marriage of Belk, 239 Ill. App. 3d 806, 605 N.E.2d 86 (1992), are highly instructive on the issue of equitable division of a disability pension. In both cases, the issue was whether the wife was entitled to an interest in the husband's disability pension where the judgment specifically gave her an interest in her spouse's pension. In both cases, the appellate court held that the parties could not have intended to award the ex-spouse an interest in the disability pension because such an interpretation would be unjust to the disabled spouse. See In re Marriage of Davis, 286 Ill. App. 3d, 1065, 1068, 678 N.E.2d 68, 70 (1997); In re Marriage of Belk, 239 Ill. App. 3d 806, 812, 605 N.E.2d 86, 90 (1992).

Both Davis and Belk are distinguishable from the instant case. In those cases, the appellate court was interpreting the terms of a settlement agreement where the parties had agreed that the wife had an interest in the husband's pension. However, both settlement agreements were silent on the issue of the wife's interest in any disability pension. The courts in both Davis and Belk held that where the settlement agreement did not refer to a disability pension, the parties did not contemplate the division of a disability benefit. Therefore, the courts held that the wife was not entitled to a portion of the husband's

disability pension. *Davis*, 286 Ill. App. 3d at 1068, 678 N.E.2d at 70; *Belk*, 239 Ill. App. 3d at 812, 605 N.E.2d at 90.

Here, we are not reviewing the terms of a settlement agreement. Todd's disability commenced prior to the dissolution of his marriage, and he was drawing proceeds from the disability pension throughout these proceedings. It is well settled that disability pensions are considered marital property. *In re Marriage of Smith*, 84 Ill. App. 3d 446, 405 N.E.2d 884 (1980). Therefore, *Davis* and *Belk* are not highly instructive in this case. *In re Marriage of Davis*, 286 Ill. App. 3d 1065, 678 N.E.2d 68 (1997); *In re Marriage of Belk*, 239 Ill. App. 3d 806, 605 N.E.2d 86 (1992).

For these reasons, we find that the trial court properly divided the marital portion of the disability pension equally between Susan and Todd.

## B. Method of Calculation

Todd next argues that the trial court erred in the method it chose to determine the marital share of his disability pension. He claims that the trial court erred in finding that the marital portion of his disability pension was 87.5%, leaving only 12.5% as nonmarital property. He contends that the trial court should have used the widely accepted formula enunciated in *In re Marriage of Hunt* to find that the nonmarital portion of his pension was actually 38.4%. See *In re Marriage of Hunt*, 78 Ill. App. 3d 653, 397 N.E.2d 511 (1979).

■ A formula widely accepted by Illinois courts in allocating the division of marital and nonmarital pension interests was set out in *In re Marriage of Hunt*, 78 Ill. App. 3d 653, 397 N.E.2d 511 (1979). With that method, the marital share is determined by the present value of the interest multiplied by a fraction whose numerator is the number or years (or months) of marriage during which benefits were being accumulated, and whose denominator is the total number of years (or months) during which benefits were accumulated prior to the divorce. See *In re Marriage of Hunt*, 78 Ill. App. 3d 653, 663, 397 N.E.2d 511, 519 (1979).

The trial court has broad discretion in the valuation and distribution of marital assets. *In re Marriage of Alshouse*, 255 Ill. App. 3d 960, 627 N.E.2d 731 (1994). However, a reviewing court will reverse a trial court's judgment of the valuation of marital assets when no reasonable person could adopt the trial court's position. See *In re Marriage of Benz*, 165 Ill. App. 3d 273, 518 N.E.2d 1316 (1988).

■ The trial court abused its discretion in valuing the marital portion of Todd's disability pension at 87.5%. Todd began covered employment under his pension plan in 1972, a full 13 years before he married

Susan. He was a participant in the plan for more than 27 years before he began receiving disability benefits. At the time he became disabled, Todd had 39.65 pension credits. Almost 40%, or 15.25, of those credits were earned prior to his marriage to Susan. Nevertheless, the trial court found that 87.5% of Todd's disability pension was marital property.

The court arrived at this figure by fixing Todd's accrued benefit at the time of the marriage and comparing it to the accrued benefit at the date of dissolution. In making that determination, the court adopted the method employed by Susan's expert, Kevin Mason. Mason's rationale for this lowered amount was that in the later years, "as earnings go up, the amount of contributions to the fund in a union-negotiated plan normally increase, so that there would have been more benefit accrued after the date of marriage than prior."

In finding that the marital portion of Todd's disability pension was 87.5%, the trial court implicitly adopted a freezing approach to the determination of the marital share, as opposed to the "proportionality rule," which is more widely accepted in Illinois. See *In re Marriage of Wisniewski*, 286 Ill. App. 3d 236, 244, 675 N.E.2d 1362, 1369 (1997).

Moreover, the argument for utilizing a fixed, accrued benefit at a set date for a determination of the marital share has been rejected by at least one appellate court. See *In re Marriage of Wisniewski*, 286 Ill. App. 3d 236, 675 N.E.2d 1362 (1997). The court in *Wisniewski* also held that regardless of how pension benefits are calculated under the language of a particular plan, contributions in the early years are more valuable to the payor of the plan than are payments in later years, because the value of the money in the early years is worth more than in the later years. *In re Marriage of Wisniewski*, 286 Ill. App. 3d 236, 244, 675 N.E.2d 1362, 1369 (1997). We are persuaded by the reasoning in *Wisniewski*. *In re Marriage of Wisniewski*, 286 Ill. App. 3d 236, 675 N.E.2d 1362 (1997).

We reject the trial court's finding that the marital portion of Todd's disability pension was valued at 87.5%. We reverse the trial court's valuation of the marital portion of the disability pension and remand this issue for the trial court to recalculate the marital portion the pension in accordance with the *Hunt* formula (*In re Marriage of Hunt*, 78 Ill. App. 3d 653, 397 N.E.2d 511 (1979)).

### C. The Joint and Survivor Annuity

Todd also contends that the trial court abused its discretion in failing to allocate the cost of the joint and survivor annuity to Susan or, alternatively, in failing to award him compensating assets. In

response, Susan argues that the trial court did not abuse its discretion when it did not allocate the cost of the joint and survivor annuity to her because Todd chose to elect the survivor annuity of his own free will in February 2000.

■ A survivor's benefit is a distinct property interest. *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 735 N.E.2d 560 (2000). Even though it is of a contingent nature, a survivor's benefit has a determinable value and it is properly considered a marital asset. *In re Marriage of Moore*, 251 Ill. App. 3d 41, 621 N.E.2d 239 (1993). Section 503 of the Act requires the division of marital property in "just proportions." 750 ILCS 5/503(d) (West 2000). A trial court's decision on the distribution of property will not be reversed unless the court clearly abused its discretion. *In re Marriage of Perino*, 224 Ill. App. 3d 605, 587 N.E.2d 54 (1992).

■ Whether or not Todd chose to elect the survivor annuity during the marriage is irrelevant to the allocation of the cost of the annuity in the judgment of dissolution. Todd chose the survivor annuity during the course of the marriage and therefore it is a marital asset. It is undisputed that this annuity reduces the amount of the pension. A division of the marital property without reference to Susan's interest in the survivor annuity is not a division "in just proportions." See 750 ILCS 5/503(d) (West 2000). Therefore, the trial court abused its discretion when it failed to reduce the portion of Todd's disability pension awarded to Susan by the cost of that annuity. Accordingly, we remand this issue to the trial court to calculate such a reduction.

### D. Todd's Supplementary Pension

■ Todd next argues that the trial court abused its discretion by failing to reduce any portion of his disability pension to Susan when his supplementary pension terminates. He is referring to his $300-per-month additional pension which supplements his health insurance payments.

Section 503(d) of the Act mandates that marital property be divided in just proportions. 750 ILCS 5/503(d) (West 2000).

We find no error. The judgment provides that, "Petitioner is hereby awarded one-half of the marital portion of the pension, which at this time is the sum of $1,298.06 per month." The trial court's reference to "at this time" indicates that it would consider a reduction in the payment amount if the marital portion of the pension were reduced at some time in the future. Therefore, the trial court did not abuse its discretion in failing to make a prospective reduction of the amount awarded to Susan when Todd's supplementary pension terminates.

### E. Retroactive Award of Disability Benefits

■ Todd next claims that the trial court abused its discretion in its

final order dated November 1, 2002, when it retroactively ordered Susan's pension award to be effective to July 2002. Todd contends that this retroactive award is unfair because the award covers a period when the parties were residing in the same household and Todd was giving Susan $500 per month for spending money.

Todd also argues that this retroactive award was an abuse of the trial court's discretion because: (1) only he has incurred any tax liability by the receipt of pension payments after July 2002 since no QDRO had been entered; and (2) the November 1, 2002, order does not state that a party will be responsible for the other party's taxes incurred on the receipt of the first party's share.

We find no abuse of discretion. Here, the court used its discretion to create a compromise to cover the nine-month period between the last day of trial on January 29, 2002, and the day the judgment of dissolution was entered on November 1, 2002. When this matter began in July 2000, the trial court awarded Susan temporary maintenance and support of $500 per month. She lived off this small amount for two years before the entry of the judgment of dissolution. At the same time, Todd had control of the payments from his disability pension and other benefits totaling over $3,000 per month. In awarding Susan her share of the pension retroactively to July 2002, we find that the court was merely adjusting the equities between the parties. See *In re Marriage of Benkendorf*, 252 Ill. App. 3d 429, 624 N.E.2d 1241 (1993) (trial court did not abuse its discretion in using a valuation date of the last date of trial where that date was not so remote from the judgment in time or significant events).

We are likewise not concerned with the tax ramifications of the retroactive award. The trial court specifically noted in its order that each party was responsible for his or her own tax liability and each party would indemnify the other for any tax liability so incurred. If Todd believes that Susan has not paid her share of the taxes, he may return to the trial court to resolve this issue.

### F. Child Support Issues

Todd raises four distinct issues with regard to the trial court's award of child support. We will address each issue separately.

### 1. Deduction for Health Insurance

First, Todd argues that the trial court abused its discretion in setting child support at an amount that exceeded the statutory guidelines. Specifically, he claims that the trial court ordered him to pay more than 20% of his income when it required him to continue to provide health insurance for T.C. without deducting the insurance premiums from his net income.

Generally, the minimum amount of child support that can be awarded for one child is 20% of the supporting parent's net income. 750 ILCS 5/505(a)(1) (West 2000). In determining net income for the purposes of setting child support, Illinois law provides that dependant heath insurance premiums will be deducted. 750 ILCS 5/505(a)(3)(f) (West 2000). The trial court's findings as to net income will not be reversed absent an abuse of discretion. *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 698 N.E.2d 1084 (1998).

The trial court erred in failing to deduct T.C.'s health insurance premiums before determining his net income. Therefore, we remand this issue for the trial court to recalculate Todd's net income and his child support obligation accordingly.

## 2. Retroactive Child Support

■ Next, Todd argues that the trial court erred in granting Susan retroactive child support to June 2002. He claims that she is not entitled to retroactive support since he and Susan continued to reside together through the entry of judgment in November 2002.

The decision to award retroactive child support rests within the sound discretion of the trial court. See generally *In re Marriage of Boland*, 308 Ill. App. 3d 1063, 721 N.E.2d 815 (1999). The trial court did not abuse its discretion in awarding Susan retroactive child support to June 2002. Susan had requested custody of T.C. and payment of child support in her petition for dissolution which she filed in June 2000. In June 2000, the court entered an order in which Susan was awarded custody of T.C. and child support was reserved pending the resolution of the remaining issues in this case. After those issues were resolved, it was within the trial court's discretion to award Susan child support retroactively to the time of its order granting her custody of T.C.

## 3. Abatement of Child Support During Summer Months

■ Todd contends that the trial court erred in failing to abate his child support responsibility during the summer months since T.C. lives with him during those months.

There should not be an automatic deduction in child support because a noncustodial parent has the opportunity to spend substantial time with the child and fulfill a parental responsibility. *In re Marriage of DeMattia*, 302 Ill. App. 3d 390, 706 N.E.2d 67 (1999).

Todd is not entitled to an abatement of his child support payments when his son visits him during the summer. In addition to the fact that Todd is fulfilling a parental responsibility during that time, Susan still must finance T.C.'s expenses including housing, clothing and upcoming school expenses during that time. Therefore, the trial court did not abuse its discretion in failing to abate Todd's payments during the summer months.

#### 4. Allocation of the Dependency Exemption

■ Todd also argues that the trial court erred in failing to address the income tax dependency exemption. He claims that he is entitled to the dependency exemption in alternate years commencing in 2002 since he provides for T.C.'s health insurance costs and receives no assistance from Susan when T.C. resides with him during the summer.

The allocation of the income tax dependency exemption is an element of support over which the trial court has discretion. See *In re Marriage of Fowler*, 197 Ill. App. 3d 95, 554 N.E.2d 240 (1990).

Todd was entitled to the dependency exemption in alternate years. His visitation with T.C. is substantial, consisting of almost the entire summer, three weekends per month, and one evening per week. That amount of time, coupled with his child support and health insurance contributions, entitle him to such an exemption. Therefore, on remand, we direct the trial court to award Todd the income tax dependency exemption in alternate years.

### G. Todd's Motion to Reopen the Evidence

■ Finally, Todd argues that the trial court abused its discretion in denying his motion to reopen the evidence to introduce evidence concerning the details of the disability plan that had not been addressed.

The denial of a motion to reopen proofs is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *In re Marriage of Davis*, 215 Ill. App. 3d 763, 576 N.E.2d 44 (1991). If evidence offered for the first time in a posttrial motion could have been produced at an earlier time, it is not an abuse of discretion for the court to deny its introduction into evidence. *Davis*, 215 Ill. App. 3d at 776, 576 N.E.2d at 53.

The trial court properly denied Todd's motion to reopen the evidence. Todd complains that his counsel withdrew from this case in June 2002 and that he had to proceed *pro se* until judgment was rendered in November 2002. However, Todd failed to allege that the evidence he wanted to introduce could not have been produced at an earlier time. Therefore, the trial court did not abuse its discretion in denying Todd's motion to reopen the evidence.

### III. CONCLUSION

We affirm that portion of the trial court's order which equally distributed the marital portion of Todd's disability pension between the parties. We reverse the portion of the trial court's order finding that the marital portion of Todd's disability pension was 87.5%. We remand this issue to the trial court to recalculate the marital portion

of the disability pension using the formula set out in *In re Marriage of Hunt*, 78 Ill. App. 3d 653, 397 N.E.2d 511 (1979). We also remand for the trial court to allocate the cost of the joint and survivor annuity to Susan.

The trial court did not err in failing to reduce any portion of the disability pension to Susan when Todd's supplementary pension terminates. We affirm the retroactive award of Susan's portion of the disability pension to July 2002.

We reverse the trial court's order for child support and remand this cause for the trial court to consider Todd's contribution of health insurance costs in determining his net income. We affirm the retroactive award of child support commencing in June 2002. The trial court did not err in failing to abate Todd's child support payments during the summer months. However, on remand, we order the trial court to award Todd the income tax dependency exemption for T.C. in alternate years. Finally, we affirm the trial court's order denying Todd's motion to reopen the evidence. We also direct the trial court to modify the QDRO to comply with these orders.

For the reasons stated herein, the judgment of the circuit court of Bureau County is affirmed in part, reversed in part and remanded.

Affirmed in part; reversed in part; remanded.

LYTTON and McDADE, JJ., concur.