SECOND DIVISION

No. 1-07-1201

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| PAUL D. RICHARDSON, | ) | Cook County |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No.  92 D 18312 |
| and | ) | |
| | ) | |
| PATRICIA KENNEDY RICHARDSON, | ) | Honorable |
| | ) | Raul Vega, |
| Respondent-Appellee. | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Petitioner Paul Richardson and respondent Patricia Kennedy Richardson were divorced in 1995 after 10 years of marriage.  Pursuant to the terms of the parties' settlement agreement, the judgment of dissolution of marriage awarded respondent one-half of petitioner's pension "as it has accrued" from the date of the marriage to the date of the dissolution judgement.  Petitioner, a police officer, accrued pension benefits in the Village of Hoffman Estates Police Pension Fund from 1973 until his retirement in

2002. In March 2007, the court apportioned the pension benefits, ordering petitioner to pay respondent $1,112.67 per month as her half share of the marital portion of petitioner's monthly pension benefit, pay her any arrearage due on her share and "pass along" to respondent any 3% cost of living benefit increases when he received them. Petitioner appeals, arguing the court erred in apportioning his pension benefits because (1) its benefit calculation violates the language of the settlement agreement and (2) respondent should not receive the "full" 3% cost of living increases. We affirm, but remand for correction of the order.

## Background

Petitioner started participating in the pension plan when he was hired by the Village of Hoffman Estates police department on October 12, 1973. He married respondent on June 14, 1984. The court entered the dissolution of marriage order on March 27, 1995. Pursuant to the terms of the parties' oral settlement agreement, the judgment of dissolution of marriage provided:

> "Wife is hereby awarded one-half (1/2) of Husband's pension as it has accrued form [*sic*] the date of the marriage to the date of the entry of this Judgment of Dissolution of Marriage. This court shall retain jurisdiction of this cause for the purpose of entering a Qualified Domestic Relations Order."

In December 2002, petitioner retired and started collecting his benefits.

Pursuant to the Illinois Pension Code (40 ILCS 5/3-111 (West 2006)), for service in excess of 20 years, a pension is calculated at 50% of the employee's final salary,

2

plus an additional 2.5% of salary for each full year of service up to 30 years. Petitioner worked 29 full years. His yearly benefit was, therefore, calculated at 72.5% of his final salary, for a monthly benefit of $6,012.83 gross. This amount is uncontested.

In September 2003, petitioner started paying respondent what he considered her share of the benefits, admittedly guessing at the amount. He contacted the pension fund requesting a calculation of how much he should be paying respondent. The fund informed him he should be paying respondent $625.40 per month, and petitioner started remitting that amount in December 2003, plus additional sums to cover the arrearage due to his failure to pay this monthly sum as of the date he started collecting his pension in December 2002.

In July 2003, respondent moved for compliance with the judgment for dissolution and requested the court order petitioner to consent to having respondent's share of the pension remitted directly to her by the pension fund through a qualified domestic relations Order. When the court dismissed her motion, respondent filed a rule to show cause and other relief, asserting petitioner's calculation of respondent's share of the pension was incorrect and requesting a judgment for the correct monthly amount and payment of any arrearage. She subsequently filed a petition for modification or clarification of the judgment of dissolution, requesting the court determine the exact amount she should be receiving as her half share of the marital portion of the pension.

Respondent asserted her half share of the marital portion of petitioner's pension should be either $1,118.44 or $1,112.67 per month, depending on which of the two

3

allocation formulas suggested by her expert applied, plus her share of the 3% cost of living increases petitioner would receive annually starting in January 2005. Petitioner responded that respondent's half share of the marital portion of his pension should be $625.40 per month, asserting respondent should not receive the benefit of the years he worked before and after the divorce.

At the hearing, it was uncontested that the parties' intent was that respondent receive 50% of the marital portion of petitioner's pension. However, the parties did not agree on how to calculate the marital portion and presented testimony by pension valuation experts to support their respective benefit calculations. Both parties' experts agreed that petitioner's pension plan was a "defined benefit plan," whereunder the value of the benefit is determined at retirement based on years of service and final salary. It was not a "defined contribution plan," where the value of the pension is based on contribution/deposits made to the plan and investment risk and can be determined before retirement. Under the terms of the pension plan, petitioner's benefits had not vested or matured at the time of dissolution. Petitioner had neither the age nor the years of participation in the plan to be able to collect his pension on the date of dissolution. Further, if petitioner died before he started collecting his pension, neither he nor respondent would collect any benefits.

Respondent's expert suggested two approaches to determining the marital portion of the pension: the subtraction approach and the reserved jurisdiction approach. Using the subtraction approach, she determined respondent's half share of

the marital portion of the pension to be $1,118.44 per month. She reached this conclusion by, as she explained, interpreting the allocation provision in the judgment for dissolution to require subtracting the benefit petitioner had accrued by the date of the marriage from the benefit petitioner had accrued by the date of the dissolution in order to determine the increase in petitioner's benefit accrued from the date of the marriage to the date of the dissolution, of which respondent would be awarded a half share, $1,118.44 per month.[1]

Using the reserved jurisdiction approach, also called the fractional approach, she calculated respondent's half share of the marital portion would be $1,112.67 per month. To determine the marital portion of the pension, she divided the length of time petitioner accrued benefits during the marriage (129.38 months) by the total length of

---

[1] Respondent's expert obtained from the pension board calculations of the benefit petitioner had accrued on both the date of the marriage ($389.78 per month) and the date of the dissolution ($2,626.66 per month). These amounts were the benefits he would receive on those two dates, calculated using the benefit formulas applicable at those two times, the varying salaries applicable at those times and necessarily assuming he was eligible to collect his pension then. Respondent's expert calculated the increase in petitioner's benefit between the date of marriage and the date of dissolution as: $2,626.66 - $389.78 = $2,236.88 per month, of which respondent would receive one-half, or $1,118.44 per month.

time petitioner accrued pension benefits before his retirement (349.60 months), and concluded it to be 37.01%. She then determined the value of the marital portion of petitioner's pension benefit by taking the marital 37.01% of the $6,012.83 monthly benefit the parties agree petitioner received upon retirement in December 2002: 37.01% x $6,012.83 = $2,225.35 per month, of which respondent would be awarded a one-half share: $1,112.67 per month.

Petitioner's expert, the actuary for the Village of Hoffman Estates and the pension fund, determined respondent's half share of the marital portion of the pension to be $625.40 per month. Because petitioner had accrued 10 full years of benefit during the term of the marriage by the date of dissolution in 1995, his expert calculated the marital portion of the pension by using the provision in the Pension Code applicable in 1995 for service of less than 20 years, pursuant to which a police officer would receive 2.5% of his or her salary for every full year of service. He, therefore, calculated the marital portion of the pension as 25% (2.5% for each of the 10 years of service during the marriage) of the $60,037.90 salary petitioner was receiving at the time of the dissolution in March 1995. Respondent's half share of this marital portion would be $625.40 per month. Petitioner's expert stated he did not consider petitioner's income at the time of retirement in December 2002 because he was only asked to calculate the value of the benefit at the time of the dissolution.

Respondent's expert testified petitioner's expert's calculation was wrong because it was based on petitioner's salary at the time of the dissolution, which she

stated was completely irrelevant in determining his final pension benefit. She explained that, pursuant to the terms of the defined benefit plan, all years in the plan are counted at the same salary: the salary petitioner was receiving at the time he retired. The plan would pay the same benefit for each of the 10 years petitioner accrued benefits while married as for the years he accrued benefits before and after the marriage. She testified the greater value of the pension now would not be possible without the earlier years' contributions and that no single year's contribution was more valuable than any other year's. Both experts agreed that the annual 3% cost of living increases petitioner would receive starting in January 2005 were not earned benefits resulting from petitioner's service as a police officer and he would get them annually no matter how many years he participated in the pension plan.

On March 29, 2007, the court found that petitioner was not in indirect civil contempt for failing to follow the judgment for dissolution of marriage because the amount due respondent was not clear or determined. It held that petitioner's pension plan was a defined benefit plan, its value could not be determined at the time of the divorce and respondent received no offset toward the pension benefits at the time of the divorce. The court found respondent's expert convincing and her use of the "reserved jurisdiction" method to compute respondent's share of the pension to be within case law and correct. It accepted the expert's calculation and ordered petitioner to pay respondent $1,112.67 per month as her share of the pension benefit, to "pass along the 3% cost of living increases whenever he receives them" and to pay

7

respondent any arrearage based on the court's calculations. Petitioner timely appealed.

Analysis

Petitioner argues the court erred in using the "reserved jurisdiction" approach advocated by respondent's expert to calculate the marital portion of the pension, asserting that this approach violates the plain language of the parties' settlement agreement incorporated in the judgment for dissolution of marriage. "[P]ension benefits earned during the marriage are considered marital property and, upon dissolution, are subject to division like any other property." *In re Marriage of Menken*, 334 Ill. App. 3d 531, 533, 778 N.E.2d 281, 283 (2002); 750 ILCS 5/503(b)(2) (West 2006). To that end, the 1995 judgment for dissolution provided:

> "Wife is hereby awarded one-half (1/2) of Husband's pension as it has accrued
>
> form [*sic*] the date of the marriage to the date of the entry of this Judgment of
>
> Dissolution of Marriage. This court shall retain jurisdiction of this cause for the
>
> purpose of entering a Qualified Domestic Relations Order."

In 2007, the court used the reserved jurisdiction approach to determine respondent's share of the marital portion of petitioner's pension to be $1,112.67 per month.

The reserved jurisdiction approach, originally set out in *In re Marriage of Hunt*, 78 Ill. App. 3d 653, 397 N.E.2d 511 (1979), is a formula widely accepted by Illinois courts in allocating the division of unmatured pension interests. *In re Marriage of Wisniewski*, 286 Ill. App. 3d 236, 241, 675 N.E.2d 1362, 1366 (1997); *In re Marriage of*

8

*Sawicki*, 346 Ill. App. 3d 1107, 1115, 806 N.E.2d 701, 708 (2004); *Robinson v. Robinson*, 146 Ill. App. 3d 474, 476, 497 N.E.2d 140, 142 (1986). Under this approach, the marital interest in a pension benefit is determined by dividing the number of years or months of marriage during which pension benefits accumulated by the total number of years or months benefits accumulated prior to retirement or being paid. *Hunt*, 78 Ill. App. 3d at 663, 397 N.E.2d at 519; *Wisniewski*, 286 Ill. App. 3d at 240, 675 N.E.2d at 1366 (referring to the *Hunt* formula as the "proportionality rule"). The value of the marital interest is then calculated by multiplying the amount of each benefit payment as it is disbursed by the marital interest percentage. *Hunt*, 78 Ill. App. 3d at 663, 397 N.E.2d at 519; *Robinson*, 146 Ill. App. 3d at 476, 497 N.E.2d at 142. Using this formula, respondent's expert determined the value of the marital interest in petitioner's pension benefit to be 37.01% of petitioner's monthly $6,012.83 benefit at retirement, or $2,225.35 per month, of which respondent would receive one-half, or $1,112.67 per month. The court accepted this as the correct allocation of the marital portion of petitioner's pension.

Petitioner first asserts the court had no authority to make a decision as to how the pension should be distributed at the time petitioner retired because that decision had already been made in the judgment for dissolution, that the method of calculation was set forth in the judgment and the court confused its jurisdiction regarding the time of payment with its jurisdiction to calculate the payment to be made. We disagree.

The judgment did not set out the exact allocation of the marital portion of the

pension. All the judgment provided was that respondent was awarded one-half of petitioner's pension as it had accrued from the date of the marriage to the date of the entry of the dissolution judgment. The period of time from the date of marriage to the date of dissolution is the period of time of a marriage. The marital portion of any asset is that portion of the asset accrued during the period of time of a marriage. Accordingly, the judgment sets forth nothing more than that respondent was awarded one-half of the marital portion of the pension, which, as petitioner acknowledged at trial, was the intent of the agreement. It does not set forth how that marital portion will be calculated, nor the value of the portion of the pension in which respondent was awarded a 50% share.

If the method of pension apportionment has not been determined earlier, the court has "discretion to consider the evidence before it and devise a method of its own." *Wisniewski*, 286 Ill. App. 3d at 243, 675 N.E.2d at 1368. Here, because the judgment is silent as to what portion of the pension benefit is marital, by reserving jurisdiction to enter an allocation order, the court also reserved jurisdiction to determine the calculation of that allocation. It chose to use the reserved jurisdiction approach[2] to

---

[2] The term "reserved jurisdiction" as used in "reserved jurisdiction approach" refers to a court's reservation of its jurisdiction to order payment of an interest in a pension benefit when the interest matures, not to its reservation of jurisdiction to decide the allocation of that pension benefit. The court here reserved jurisdiction to do both.

10

determine the allocation. We will not reverse the court's choice of an apportionment method unless the court abused its discretion in selecting that method. *Wisniewski*, 286 Ill. App. 3d at 243, 675 N.E.2d at 1368.

There are two approaches to valuing an unmatured pension upon dissolution of a marriage: the "immediate offset" approach and the reserved jurisdiction approach. *Robinson*, 146 Ill. App. 3d at 476, 497 N.E.2d at 142; *In re Marriage of Clabault*, 249 Ill. App. 3d 641, 644, 619 N.E.2d 163, 165-66 (1993). Using the immediate offset approach, the court determines the present value of a pension benefit, awards the value of the benefit to the employee spouse and offsets that award with an award of marital property to the nonemployee spouse. *Robinson*, 146 Ill. App. 3d at 476, 497 N.E.2d at 143. This approach is usually used "when there is sufficient actuarial evidence to determine the present value of a pension, when the employee spouse is close to retirement age, and when there is sufficient marital property to allow an offset." *Robinson*, 146 Ill. App. 3d at 476, 497 N.E.2d at 143. Neither party asserts that the immediate offset approach should have been used here.

The reserved jurisdiction approach is used in cases where it is difficult to place a present value on a pension due to uncertainties regarding vesting or maturation or when the present value can be ascertained but lack of marital property makes an offset impractical or impossible. *Hunt*, 78 Ill. App. 3d at 663, 397 N.E.2d at 518; *Wisniewski*, 286 Ill. App. 3d at 241, 675 N.E.2d at 1366. Under the reserved jurisdiction approach, the court does not immediately compensate the nonemployee spouse at the time of

dissolution. *Hunt*, 78 Ill. App. 3d at 663, 397 N.E.2d at 519; *Wisniewski*, 286 Ill. App. 3d at 241, 675 N.E.2d at 1366. Instead, it awards the nonemployee spouse a percentage of the marital interest in the pension and retains jurisdiction over the case in order that the employee spouse pays the nonemployee spouse his or her portion of that marital interest " 'if, as and when' " the pension becomes payable. *Hunt*, 78 Ill. App. 3d at 663, 397 N.E.2d at 519*; Wisniewski*, 286 Ill. App. 3d at 241, 675 N.E.2d at 1366. The reserved jurisdiction approach is particularly appropriate where an interest has not vested at the time of dissolution, because it divides the risk that a pension will fail to vest. *Hunt*, 78 Ill. App. 3d at 664, 397 N.E.2d at 519.

The parties agree the pension plan is a defined benefit pension plan, pursuant to which the value of an employee's pension benefit is dependent on the total number of years the employee participated in the plan and the final salary the employee was collecting at the time of retirement. See *In re Marriage of Blackston*, 258 Ill. App. 3d 401, 402, 630 N.E.2d 541, 542 (1994). The value of the benefit cannot be determined until retirement. See *Robinson*, 146 Ill. App. 3d at 475, 497 N.E.2d at 141. Further, petitioner's interest in the pension had neither matured nor vested at the time of dissolution because he was not yet eligible to collect his pension and, if he died before his pension benefits matured, his benefits would cease to exist. Because the plan itself is of a type which makes valuation virtually impossible until retirement and petitioner's interest had neither vested nor matured at time of dissolution, use of the reserved jurisdiction approach was appropriate in this case.

12

Under the reserved jurisdiction approach, the court can either (1) devise a formula at the time of dissolution that will determine both the marital interest on the pension benefits and the nonemployee spouse's share of that marital interest or (2) wait to determine the marital interest until the benefits are to be paid, *i.e.*, until the employee spouse starts to collect his pension. *Wisniewski*, 286 Ill. App. 3d at 241, 675 N.E.2d at 1366-67. Here, as stated previously, the court did not decide the method of apportioning the marital interest in petitioner's pension benefits at the time of dissolution in 1995. But, whether determined at the time of dissolution or at the time of benefit payment, the calculation of the value of the marital interest under the reserved jurisdiction approach is the same: pension benefits actually received multiplied by marital interest percentage (length of time pension benefits accrued during the marriage divided by total length of time benefits accrued prior to retirement/payment).

The value of the marital interest is calculated as a percentage of each benefit payment, rather than of the value of the pension benefit at time of dissolution and, therefore, takes into account the entire time the employee spouse accrued benefits. Petitioner argues, however, that by taking into account the entire term of petitioner's participation in the pension plan, including the time the pension accrued after the divorce, and the benefit earned on the date of retirement rather than that applicable on the date of the dissolution, the reserved jurisdiction approach violates the literal terms of the judgment for dissolution. He asserts the judgment is clear and unambiguous and means respondent should receive one-half of only that portion of petitioner's pension

accrued from June 14, 1984, the date of the marriage, to March 27, 1985, the date of the dissolution judgment, *i.e.,* that the 10-year marital portion of the pension must be calculated in isolation from the years petitioner accrued benefits before and after the marital period.

Petitioner argues that the correct calculation for the marital portion of his pension, which gives literal effect to the language of the judgment for dissolution, is that suggested by his expert: take only the 10 full years of pension benefit accrual from the date of marriage to the date of dissolution; multiply each year by 2.5% as provided by the Code for service of less than 20 years, for a total of 25%; and multiply this 25% by petitioner's salary on the date of dissolution to determine the marital portion of the pension benefit accrued between the date of marriage and the date of dissolution per year. Respondent's share of this marital portion would be 50%, or $625.40 per month.

Marital assets generally must be valued as of the date of the judgment of dissolution. *Helber v. Helber*, 180 Ill. App. 3d 507, 511, 536 N.E.2d 110, 112 (1989). However, valuing pension rights as of the date of dissolution as petitioner suggests, rights which may not be actualized until years in the future, only determines the present value *at the time of dissolution* of the benefits expected to be received upon retirement and necessarily assumes the employee spouse will no longer accrue additional benefits after the date of dissolution, such as if he stopped working on that date. *Helber*, 180 Ill. App. 3d at 511, 536 N.E.2d at 112. Valuing pension rights at the time of dissolution freezes those pension benefits as of that date. It does not take into account

the years worked after the dissolution, the cumulative effect of all the years on the pension benefit or the higher salary the employee spouse will be receiving upon his retirement, even though the plan calculates the final benefit based on these cumulative totals.

The value of petitioner's pension rights is the amount of benefits he can expect to receive upon retirement. *Helber*, 180 Ill. App. 3d at 511, 536 N.E.2d at 112. That value is ascertainable and uncontested here because petitioner is already receiving those benefits. He accrued benefits in the pension plan for 29 full years, for which the plan pays him benefits of 72.5% of his last salary, or $6,012.83 per month, starting in December 2002, plus a 3% cost of living increase annually starting in January 2005. For approximately 10 of those 29 years, or 37.01%, petitioner was married. Accordingly, the marital portion of his monthly benefit is 37.01% of his monthly benefit, $2,225.35 per month. Per the judgment for dissolution, respondent should receive 50% of the marital portion, $1,112.67 per month.

In contrast, petitioner's suggested allocation formula calculates the marital portion of his pension benefit using solely the 10 years petitioner accrued pension benefits during the marriage and calculating the benefit as a percentage of the salary at the date of dissolution. He effectively takes the 10 marital years in isolation from the years he accrued benefits in the plan before and after the marriage and freezes his participation in the plan as of the date of the judgement for dissolution, even though the pension plan determines a final benefit on the basis of the total number of years benefit

15

accrued and the salary at time of retirement.  Petitioner did not cease his employment at the time of dissolution in 1995, but petitioner's suggested allocation formula treats respondent's share of the pension as if he did.

Because petitioner is collecting his pension based on the full 29 years of his participation therein, the value to him of his 50% of the marital portion of his pension is $1,112.67 per month (50% x [37.01% x 72.5% of December 2002 salary]).  However, he is arguing that the value to respondent *of that identical share* should be $625.40 per month (50% x [25% of March 1995 salary]).  The marital shares in the pension are the same.  The parties' agreement to award 50% of the marital portion of the pension to respondent necessarily means they agreed petitioner should receive the remaining 50%, *i.e.*, they agreed to evenly split the marital portion between them and each share is the same.  If each share is the same, they should be valued the same.  The parties did not agree that respondent's marital share would be valued differently than petitioner's marital share, yet that is what petitioner essentially argues.

Pension benefits are property interests.  *In re Marriage of Papeck*, 95 Ill. App. 3d 624, 629, 420 N.E.2d 528, 532 (1981).  At dissolution, respondent obtained an actual co-ownership interest in the benefits as marital property; she became a co-owner of the pension benefits accrued during the marriage.  *In re Marriage of Krane*, 288 Ill. App. 3d 608, 617, 619, 681 N.E.2d 609, 615, 618 (1997); *In re Marriage of Papeck*, 95 Ill. App. 3d 624, 629-30, 420 N.E.2d 528, 531-32 (1981).  Freezing respondent's interest in the pension as of the date of dissolution denies her the growth in the value of the marital

share occurring during the period between dissolution and petitioner's retirement, a growth in value that petitioner, the co-owner holding an identical share, will collect. The identical percentage of a single pension benefit cannot be worth more to one person than another.

Notwithstanding petitioner's arguments to the contrary, the judgment for dissolution does not require an allocation which disregards the time petitioner worked after the divorce and the higher salary he received after the divorce. By the pension plan's own terms, each year of service is valued cumulatively: the longer you work, the higher the percentage of your final salary you will collect as your pension. Nowhere in the dissolution judgment does it provide how the marital portion of the pension, that portion accrued between the date of marriage and the date of dissolution, will be calculated, let alone that respondent's share of the marital portion will be calculated differently than petitioner's share. Nowhere in the judgment for dissolution does it provide that, even though the pension plan calculates a pension benefit based on a participant's total years in the plan and final salary and the value of petitioner's marital share is calculated on this basis, the value of respondent's identical marital share will be frozen as of the date of dissolution and will not include credit for the years petitioner accrued benefits before or after the marriage or for the higher salary he held at retirement. If this were the case, respondent's share of the pension would have been ascertainable on the date of dissolution.

Petitioner argues respondent should not share in any increase in his pension

benefits accrued between the time of the dissolution and his retirement because such increase is solely due to his postmarital efforts, that any spousal efforts respondent contributed to the accrual of his pension occurred only during the marital period and she should not get the benefit of any pension accrual thereafter. Respondent's efforts were indeed limited to the period of the marriage. However, the pension plan provides petitioner's pension benefit is calculated based on the cumulative total of his full years in the plan, here 29 years. That 29-year cumulative total is only possible because of all the years of benefit accrual, the cumulative result of his solo efforts before the marriage, his and respondent's efforts as equal partners during the marriage[3] and his efforts after the marriage. Respondent's efforts during the marriage contributed to that cumulative total, not only to the benefits accrued during the marriage years.

---

[3] Courts consider a marriage to be a partnership of coequals, the partners working together to enhance the wealth and security of the marital unit. *In re Marriage of Blackston*, 258 Ill. App. 3d 401, 405, 630 N.E.2d 541, 544-45 (1994). Any accumulation of assets during the marriage, including pensions and other less tangible assets, is considered to be due to both partner's efforts, no matter that one spouse may have been employed while the other stayed at home, and such assets are considered marital property, subject to division between the spouses upon dissolution. *In re Marriage of Blackston*, 258 Ill. App. 3d at 405, 630 N.E.2d at 545; *In re Marriage of Pieper*, 79 Ill. App. 3d 835, 841, 398 N.E.2d 868, 872 (1979).

The parties agreed respondent should receive a 50% share in the benefits to which she contributed. Petitioner, as the holder of any remaining share in those marital benefits, necessarily, therefore, holds the remaining 50% share, a share equal to respondent's. Petitioner's 50% share is worth $1,112.62 per month. If spouses agree to equally divide a marital asset, each spouse's share of that asset must obviously be valued the same, or the division would not be equal. Equal shares must be valued the same, and the judgment for dissolution does not provide otherwise. The court did not abuse its discretion in applying the widely accepted reserved jurisdiction approach and awarding respondent $1,112.67 per month as her 50% share of the marital portion of petitioner's pension benefit.

Cost of Living Increase

Petitioner also argues the court erred in awarding respondent "the full 3% of the cost of living increases" and that the yearly increases should be shared in the same proportion as the pension benefit each party receives. We agree that each party should receive his or her proportionate share of such increases. The court's order states respondent "should also pass along the 3% cost of living increases whenever he receives them." This statement could be interpreted as requiring petitioner to give respondent the entire amount of any increase. It would be in respondent's favor to interpret it as such. However, as respondent's response to this argument shows, even she does not interpret it as requiring petitioner to pay her the full 3% increases. She merely responds that petitioner's efforts did not contribute anything toward

19

*respondent's share* of the 3% cost of living increase and the court did not abuse its discretion in passing on the increase to respondent, *i.e.*, in passing on her *share* of the increase.

Further, in the body of the court's order, it sets out the amounts petitioner should have paid respondent as follows:

"December 2002: $1,112.37

January 2003 through December 2003: $1,112.37 per month

January 2004 through December 2004: $1,112.37 per month

January 2005 through December 2005: $1,212.48 per month

January 2006 through December 2006: $1,248.85 per month."

Putting aside for the moment the fact that the above amounts were inaccurately calculated, the order dictates that the amount petitioner was to pay respondent increased on January 1, 2005, by $100.11 per month ($1,212.48 less $1,112.37). This increase represents respondent's proportionate share of the retroactive 3% cost of living increase petitioner received effective January 1, 2005.[4] Similarly, the $36.37

---

[4] On January 1, 2005, petitioner received his first 3% cost of living increase. Pursuant to the Pension Code, the increase was retroactive to the start of his retirement and covered three years' increases. 40 ILCS 5/3-111.1(d) (West 2006). Accordingly, his monthly benefit increased from $6,012.83 to $6,553.96, an increase of $541.13 (3 yrs x 3% x monthly benefit). On January 1, 2005, therefore, respondent's

20

increased amount he was to pay respondent effective January 1, 2006 ($1,248.85 less $1,212.48), represents respondent's proportionate share of the 3% cost of living increase petitioner received effective January 1, 2006.[5]  The court's order makes clear that it intended petitioner to pass along to respondent only her proportionate share of his cost of living increases.  Petitioner's argument is moot.

Correction of the Court's Order

We note, *sua sponte,* that the section of the court's order setting forth the amounts petitioner should have paid respondent monthly from December 2002 through December 2006, starting with $1,112.37 per month in December 2002, conflicts with an

---

share of petitioner's monthly benefit increased from $1,112.67 (50% x (37.01% x $6,012.83]) to $1,212.81 (50% x [37.01% x $6,553.96]), or by $100.13.  This increase represents respondent's proportionate monthly share of petitioner's 2005 retroactive cost of living increase.  Another way to calculate respondent's share of this increase is: 50% x (37.01% x $541.13) = $100.13.  Note: the circuit court incorrectly awards respondent an increase of only $100.11 per month.

[5]  On January 1, 2006, as he would each year thereafter, petitioner received another 3% cost of living increase, this time in the amount of $196.61 per month (3% of his 2005 monthly benefit of $6,553.96). Accordingly, respondent's share of this increase was 50% x 37.01% x $196.61, or $36.38 per month.  Note: the circuit court incorrectly awards respondent an increase of only $36.37.

earlier section in the order directing petitioner to pay respondent $1,112.67 per month. The amounts set forth in the later section are the allocation amounts suggested by respondent's expert and accepted by the court, but they are inaccurate.

The expert originally calculated respondent's share of petitioner's benefit using the following formula: 50% x (37.01% x $6,012.83) = $1,112.67. However, for later uses of the formula, instead of using 50% x 37.01%, she simplified it as 18.5% (or 50% x 37%), thus reducing respondent's share by 50% x .01%. Using this simplified but inaccurate formula, the expert incorrectly determined respondent's share to be $1,112.37 per month (18.5% x $6,012.83), thus reducing respondent's share by $0.30 per month ($1,112.67 - $1,112.37). Her calculations for the subsequent years also used the simplified formula and are similarly incorrect. Although the difference in the amounts is small, respondent should receive the exact amount she is due.

To that end, applying the correct formula to the monthly benefits petitioner received from 2002 through 2006[6], the amounts petitioner should have paid respondent

---

[6] The record shows petitioner's benefits for 2002 through 2006 were as follows:

| | |
|---|---|
| December 2002 | $6,012.83 |
| January 2003 through December 2003 | $6,012.83 per month |
| January 2004 through December 2004 | $6,012.83 per month |
| January 2005 through December 2005 | $6,553.96 per month |
| January 2006 through December 2006 | $6,750.57 per month |

are as follows:

| | |
|---|---|
| December 2002 | $1,112.67 |
| January 2003 through December 2003 | $1,112.67 per month |
| January 2004 through December 2004 | $1,112.67 per month |
| January 2005 through December 2005 | $1,212.81 per month |
| January 2006 through December 2006 | $1,249.19 per month. |

We remand for correction of the order to reflect these allocation amounts.

For the reasons stated above, we affirm the decision of the circuit court and remand for correction of the order.

Affirmed and remanded with instructions.

HOFFMAN, P.J., and HALL, J., concur.

1-07-1201

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

*In re* MARRIAGE OF

PAUL D. RICHARDSON,

   Petitioner-Appellant,

and

PATRICIA KENNEDY RICHARDSON,

   Respondent-Appellee.

No. 1-07-1201

Appellate Court of Illinois
First District, Second Division

March 4, 2008

JUSTICE KARNEZIS delivered the opinion of the court.

HOFFMAN, P.J., and HALL, J., concur.

Appeal from the Circuit Court of Cook County.

The Honorable Raul Vega, Judge Presiding.

For APPELLANT: Paul J. Bargiel, P.C., of Chicago (Paul J. Bargiel, of counsel) and Law Offices of Donald E. Puchalski, of Chicago (Donald E. Puchalski, of counsel)

For APPELLEE: Jerome Marvin Kaplan, of Chicago