*In re* MARRIAGE OF ALLEN R. BELK, Petitioner and Counterrespondent-Appellant, and DIANE M. BELK, Respondent and Counterpetitioner-Appellee.

Second District Nos. 2—91—0993, 2—91—0857 cons.

Opinion filed July 2, 1992.

Charles H. Atwell, Jr., of Atwell & Atwell, of Aurora, for appellant.

John A. Leemon, of Mount Carroll, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Petitioner, Allen R. Belk (Allen), appeals from an order which determined that, under the judgment of dissolution of the parties' marriage, respondent, Diane M. Belk (Diane), was entitled to half of a portion of his disability pension. He also appeals from a related order which abated his obligations for child support, medical expenses, and college expenses of the parties' children. Allen asserts on appeal that the trial court misconstrued the judgment of dissolution.

The parties were married in 1970. Their marriage was dissolved on March 22, 1991, when Allen and Diane were 41 and 37 years of age, respectively. At the time of dissolution, the couple's oldest child was already emancipated, their middle child was in college, and the youngest was eight years old. For the nine years preceding the divorce Allen had worked as a police officer for the City of Savanna.

The judgment of dissolution incorporated the following stipulation by the parties:

> "12. That the Parties have stipulated that the Counter-[petitioner] has no pension; that the Counter-[respondent's] pension plan is marital property; that the Counter-[petitioner] shall receive the following portion of the Counter-[respondent's] pension: 50% of a fraction, the numerator being the number of months the Counter-[respondent] was in the pension plan during the Parties' marriage and the demoninator [*sic*] being the number of months the Counter-[respondent] was in the pension plan; and that said portion will be paid to the Counter-[petitioner] when and at the time the Counter-[respondent] withdraws any amounts from his pension plan or he is paid any benefits under said plan."

With the exception of Allen's pension, as described in the stipulation, all of the marital property was divided by the trial court following a contested hearing. Both parties waived their right to maintenance. No appeal was taken from the judgment.

On March 31, 1991, Allen was seriously injured in a nonduty-related auto accident and thereafter was unable to work. Accordingly, he sought and received disability benefits from the Savanna police pension fund in the amount of $877.94 per month, which was approximately 50% of the salary he had been earning immediately prior to the disabling accident.

In April 1991, Allen filed a motion to modify and abate the payment of child support and the other expenses of the children. He alleged a substantial change in circumstances in that, as a result of the accident, he was not employed and had no income to pay his obligations. Prior to the disposition of the motion the trial court considered memoranda and heard arguments on the issue whether Diane was entitled to receive a portion of Allen's disability payments. It is not altogether clear how this issue was raised. Allen claims in his appellate brief that no pleading or request for interpretation of the judgment of dissolution was filed with the court but that the court acted on its own motion. The record contains no motions relevant to the initiation of the issue. In its memorandum opinion of June 26, 1991, the trial

court indicated that, at a conference held prior to hearing on the motion to abate, counsel and the court agreed that determination of the child support issues would depend on how the court characterized Allen's disability pension. According to the court, the parties requested a determination as to Diane's entitlement under the judgment. Regardless of how the issue was raised, however, the court clearly proceeded to decide that Diane had an enforceable claim to part of Allen's disability payments.

The court held essentially that the disability Allen was receiving was similar to a retirement pension and should be treated the same as a retirement pension. The parties had stipulated that Allen's pension was marital property and that, as such, a portion of it should be paid to Diane at the time Allen received benefits or withdrew funds from the pension. Thus, the court concluded that Diane was entitled to 50% of a portion of Allen's disability payments.

Having determined that Allen's disability was marital property, the trial court turned to Allen's motion to abate. Following a hearing on the matter, the court found there had been a substantial change in Allen's ability to pay his child support obligations and that Diane's share of Allen's disability payments constituted an increase in her financial resources. The court ordered the complete abatement of child support as well as Allen's obligation for the children's medical and college expenses. Allen timely appealed from both the court's determination that his disability benefit was marital property and the order of abatement. With regard to the latter order, it is apparent from his notice of appeal that Allen appeals only insofar as the order may be related to an increase in payments to Diane.

On appeal, Allen contends that Diane has a right to his pension benefits only to the extent set forth in the relevant provision of the judgment of dissolution. He does not contest that, under that provision, which was based on the parties' stipulation, Diane was expected to share in the pension he would receive upon routine, age-related retirement. He insists, however, that the stipulation does not reflect any intention that Diane should receive part of his disability payments. In fact, Allen maintains that he and Diane simply did not contemplate the prospect of disability and, therefore, did not provide for it in their stipulation. Diane counters essentially that the trial court was correct in finding, as a matter of law, that Allen's disability benefits are part of his pension plan, and she is entitled to half of a portion of those benefits. She maintains that what Allen seeks is an untimely modification of the judgment of dissolution and not merely an interpretation of the parties' stipulation as recorded in the judgment.

At the outset, we agree with Allen that the parties' stipulation, as set forth in and as part of the judgment of dissolution, must control the resolution of this matter. The record clearly reflects that both Allen and Diane freely and voluntarily entered into the stipulation. Diane suggests no reason why she should not now be bound by it.

When interpreting the provisions of a marital settlement agreement or a dissolution judgment which incorporates such an agreement, the rules pertaining to the construction of contracts are applicable. (*In re Marriage of Druss* (1992), 226 Ill. App. 3d 470, 475; *In re Marriage of Mateja* (1989), 183 Ill. App. 3d 759, 761.) If a contract is judicially interpreted, the primary goal is to discover and give effect to the intent of the parties at the time they entered into the contract. (*Druss*, 226 Ill. App. 3d at 475; *Gardner v. Padro* (1987), 164 Ill. App. 3d 449, 453.) However, a court will not resort to rules of construction when the language of a contract is clear and its meaning unambiguous. (*Halper v. Halper* (1978), 57 Ill. App. 3d 588, 591.) In such a case the parties' intent is to be gathered from the language of the document itself. *Mateja*, 183 Ill. App. 3d at 762.

■ On the other hand, when an instrument is incomplete or the language is ambiguous, the court may look beyond the contract to extrinsic evidence to help explain the language. (*Druss*, 226 Ill. App. 3d at 476; *In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 202.) A contract is ambiguous when the language used is reasonably susceptible to more than one meaning. (*Druss*, 226 Ill. App. 3d at 476; *Holderrieth*, 181 Ill. App. 3d at 202.) Here, insofar as it refers to a "pension" or "pension plan," we find the language in the judgment of dissolution to be ambiguous in that it is reasonably susceptible to the meanings ascribed to it by both Diane and Allen. It could refer solely to an age-related pension, or it could refer to both an age-related and a disability pension. Accordingly, we will interpret the provision to try to discern what the parties intended.

Intent must be determined from the contract as a whole. (*Druss*, 226 Ill. App. 3d at 475; *Holderrieth*, 181 Ill. App. 3d at 202.) Individual contract provisions are best understood by considering the entire provision rather than only selected phrases. (*Daiwa Bank, Ltd. v. La Salle National Trust* (1992), 129 Ill. App. 3d 366, 379-80.) While the stipulation incorporated into the judgment repeatedly addresses the husband's "pension," it is devoid of any reference to "disability," either express or by obvious inference. It mentions neither "disability benefits" nor "disability retirement" or "disability pension." Also, the judgment relates the parties' stipulation that the wife "has no pension" and includes an additional finding by the trial court that Diane

has no pension plan at this time "other than Social Security benefits that she would obtain as a result of her earnings." Again, there is no reference to "disability" or any other language which implies that the parties were thinking of a preretirement disability benefit. The total absence of an express, or at least a strongly implied, reference to disability or disability benefits is persuasive that such benefits were not in the parties' contemplation at the time of dissolution.

In addition, viewing the repeated finding that Diane had no pension together with the finding that she was currently employed and that she waived maintenance is indicative that the parties were focused on the pension which normally comes due when employees reach retirement age and stop working. At that time, Diane conceivably would have neither a salary income nor a pension of her own, and Allen's pension benefits would be of great importance to her. It appears the parties were not concerned with disability benefits which could be payable to Allen at any time prior to an age-related retirement. Had the parties intended to include disability benefits, we believe they would have made some specific provision for them since they could be received while Diane was still earning a steady income.

Similarly, when the other provisions of the judgment are examined collectively with the pension stipulation, it makes no sense to conclude that Allen would have agreed to the division of disability payments urged by Diane. A contract should be given a fair and reasonable interpretation based on consideration of all its language and provisions. (*Shelton v. Andres* (1985), 106 Ill. 2d 153, 159; *In re Marriage of Thaden* (1983), 119 Ill. App. 3d 538, 541.) The interpretation urged by Diane does not comport with this rule.

At the time the trial court divided the parties' property, no value was assigned to Allen's pension. The parties merely agreed to a 50/50 split of the relevant portion of whatever pension Allen would receive in the future. Thus, no amount was allotted for the pension in the calculation of the property distribution. While the rest of the property was divided roughly evenly between Allen and Diane, that division was premised, in part, on both of them earning a full-time income. However, subsequent to his injuries, Allen received only his disability benefits, which equalled one-half of his former income. Under the formula for dividing his pension, Diane, who continued to receive her full salary, was awarded half again of Allen's already reduced income, and Allen was left with only one-quarter of the income the trial court had taken into consideration in dividing the property and ordering child support. The parties' stipulation contained no provision for an adjustment of this harsh outcome.

When the results achieved by the trial court *without* Allen's disability benefit are compared to the results with the disability included as marital property, we find it decidedly unreasonable to think that the parties intended to divide the disability payments in the same fashion they chose to divide Allen's retirement pension. It is far more reasonable to believe that they would have taken steps to assure a fair property distribution in the event Allen was ever disabled.

The report of proceedings of a hearing held on January 22, 1991, on matters other than grounds for dissolution, also points to an intent to provide for distribution of Allen's longevity pension rather than his disability benefits. Through his attorney Allen indicated that he would agree to a formula regarding his "retirement plan" whereby Diane would receive a share "at the time of [Allen's] retirement" from the city or upon earlier withdrawal. Diane's attorney explained that she had no accrued pension rights "at this time because she has not been gainfully employed by her present employer long enough to have the necessary amount to qualify." Diane's attorney then explained that the denominator of the formula to be used in dividing Allen's pension would be "the total time that he was in the pension plan." The subject of Allen's pension, and Diane's lack thereof, was consistently discussed at the hearing in terms of retirement and longevity, or the effect of the amount of time Allen and Diane had or had not worked for their current employers.

In this regard, we note that both longevity and disability pensions are authorized for police officers by statute. Section 3—114.2 of the Illinois Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.2) provides that a police officer who qualifies for a nonduty-related disability pension "shall be entitled to a disability pension of 50% of the salary attached to the officer's rank on the police force at the date of suspension of duty or retirement." Under this provision, neither age nor length of employment is taken into consideration in calculating disability benefits. The officer's salary is the basis for his benefits. Hence, assuming he was a police officer as defined by the statute (see Ill. Rev. Stat. 1989, ch. 108½, par. 3—106), he could receive disability benefits even if he were disabled after only a few days on the job. In contrast, while longevity pensions authorized by section 3—111 (Ill. Rev. Stat. 1989, ch. 108½, par. 3—111) are partially determined by an officer's salary prior to retirement, they also depend on both the officer's age and his years of service. Thus, under the Pension Code two separate and distinct kinds of benefits are created, one available at specified junctures of age and length of employment and the other arising due to an officer's becoming disabled. The statute is persua-

sive that the two types of pensions should not be treated identically but should be considered as separate entities, each with its own characteristics.

Diane suggests that longevity is a factor in a disability pension in that the amount of an officer's salary will be greater or less depending on how long he has worked. While this may be true, the fact remains that an age-related pension cannot be taken except in accord with the statutory age and years of service requirement, while disability may be awarded without regard to either. Viewed against the background of the controlling statute, the parties' oral discussion and written stipulation regarding Allen's pension become even more persuasive that their agreement addressed Allen's longevity, or age- and service-related pension, not his disability benefits.

Finally, we take judicial notice that, as Allen claims, the formula used by the parties in their stipulation was developed as a method of determining rights to age- or service-related retirement pensions collectible in the future. (See *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653; *In re Marriage of Musser* (1979), 70 Ill. App. 3d 706.) It does not take into consideration what the division should be when one of the parties is disabled and eligible to receive benefits prior to retirement age or the completion of service.

■ After consideration of the parties' agreement itself and the circumstances surrounding that agreement, we cannot conclude the parties intended that Allen's disability payments should be divided in the fashion Diane now seeks. It is conceivable, as Allen suggests, that the possibility of his being disabled was simply not contemplated by either him or Diane. Even if this were so, it would not change our conclusion that the parties stipulated only regarding Allen's longevity pension. The parties had the right to enter into an agreement with regard to the division of any of their property. (See Ill. Rev. Stat. 1989, ch. 40, par. 502.) That they failed to make provision for disability benefits received by Allen does not justify this court in adding such a term to their agreement. Courts cannot rewrite contracts to suit either party but must enforce the contract terms as written. (*Fleisher v. Lettvin* (1990), 199 Ill. App. 3d 504, 514.) Accordingly, we find that the trial court erred in awarding Diane a portion of Allen's disability payments. Since Allen's child support obligations were abated when Diane was awarded part of his disability, and those payments will be restored in full to Allen, this matter must be remanded for reconsideration of the matter of child support.

While we decide that Allen is entitled to all of his disability benefits, we also observe that under section 3—116.1 of the Pension Code

(Ill. Rev. Stat. 1989, ch. 108½, par. 3—116.1) he may in the future elect to receive an age-related retirement pension. Should he make such an election, Diane would be entitled to share in that pension as stipulated in the judgment of dissolution. We observe also that Diane's position now is not necessarily different from what it would have been if Allen had not been disabled. There is nothing in the parties' stipulation which requires Allen to retire at any certain age. Nor is there a statutory mandatory retirement age. Thus, if Allen chose not to retire and not to take his pension funds, Diane would receive nothing.

The trial court in the case before us, in reaching its determination, relied on *In re Marriage of Smith* (1980), 84 Ill. App. 3d 446, where it was held that, under the property classification provision of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 503), a husband's disability pension constituted marital property. *Smith* is distinguishable, however, because the parties in *Smith* had no agreement with regard to the employee spouse's pension. Thus, the *Smith* court turned to the statute to determine the characterization and, thus, the distribution of the disability pension. Furthermore, the spouse's disability in *Smith* was incurred prior to the dissolution, and the amount of the disability payment was known at the time of dissolution and property division. In our view, *Smith* does not control the outcome of this case.

Both parties invoke *In re Marriage of Marshall* (1988), 166 Ill. App. 3d 954, to support their respective positions. The judgment of dissolution in *Marshall* included an agreement of the parties to share the husband's "gross military pension." Following the dissolution of the marriage, the husband became disabled and began receiving benefits. At the time he was disabled, the husband had accrued more than 20 years of service in the Air Force. The wife sought a share of the benefits based on the provision in the dissolution judgment dealing with military pensions. The husband responded that his payments were disability and not pension benefits. The court noted that an officer in the Air Force may retire and receive "retired pay" after 20 years of service. The court then looked to the parties' agreement to determine their intent and noted that, in addition to the language regarding his gross military pension, the husband had agreed not to take any action to interfere with his obtaining at least a 20-year pension. Moreover, he had specifically agreed to stay in the military service for the minimum 20-year period. The court concluded the parties intended that there be funds for the wife when the husband left active service, whether he received benefits as normal retirement benefits or disability benefits. The court added, however, that "[p]roper interpre-

tation of the agreement also does not allow the petitioner to share in the portion of disability retirement benefits paid to respondent that exceed what would have been the regular retirement payments." *Marshall*, 166 Ill. App. 3d at 962.

*Marshall* differs from the case before us in that the *Marshall* parties' agreement clearly anticipated that the husband would remain in the military for at least 20 years and the wife would then be entitled to her agreed share of longevity retirement benefits whenever the husband left active service. The couple had been married 17 years prior to the dissolution in 1979. The husband was not disabled until 1984. Thus, by the time he started receiving benefits, he had already exceeded 20 years of service, and the wife's entitlement to the retirement portion was established. The court refused to allow the characterization of the benefit, *i.e.*, retirement versus disability, to defeat the wife's accrued rights under the agreement. The statute providing for disability benefits gave the husband the option of receiving "retired pay" or payments based on the percentage of disability and set forth a formula for calculating each. Thus, the retirement portion which the wife claimed could be easily calculated and separated out from the total, if necessary.

In contrast, in this case there was no agreement as to when, if at all, Allen would retire, or when Diane would be entitled to receive retirement benefits other than Allen's age-related retirement. Nor is there any provision in the Pension Code which would help determine what, if any, portion of Allen's disability payments could be attributable to retirement rather than disability. Unlike the husband in *Marshall*, Allen was not yet eligible for regular retirement when he was disabled, so there is no formula available to calculate retirement pay. We conclude that Allen is receiving disability pay, as opposed to either retirement pay or a combination of the two, and *Marshall*, therefore, is not controlling.

For the reasons set forth above, we reverse the orders of the trial court of Carroll County and remand this matter for reconsideration of child support in light of the disability benefits to be restored to Allen.

Reversed and remanded.

INGLIS, P.J., and NICKELS, J., concur.