*In re* MARRIAGE OF PEGGY DAVIS, n/k/a Peggy Wylde, Petitioner-Appellee, and William Davis, Respondent-Appellant.

Third District   No. 3—96—0708

Opinion filed March 18, 1997.

Vince G. Portlock (argued), of Shutts, Shutts & Portlock, of Joliet, for appellant.

Raymond P. McSteen (argued), of Harry C. McSteen & Associates, P.C., of Joliet, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Respondent William Davis appeals the trial court's determination that petitioner Peggy Wylde was entitled to a portion of his disability benefits under the terms of the parties' dissolution judgment. We hold that the judgment did not give Peggy any rights to William's disability benefits.

## FACTS

When Peggy and William were divorced in 1985, the court entered an agreed judgment for dissolution of marriage that incorporated a settlement agreement. The settlement agreement provided in part:

"14. That PEGGY DAVIS is awarded a present fractional interest in WILLIAM DAVIS' Retirement Benefit Plan(s) ***. Further,

a) The retirement benefit plan(s) referred to herein is the SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND ***.

***

c) The plan herein shall pay benefits to PEGGY DAVIS if, as and when WILLIAM DAVIS RECEIVES benefits from said plan, regardless of the form or frequency of said payments.

d) The plan shall pay benefits to PEGGY DAVIS in accordance with the following formula:

Plan benefit multiplied by $1/2$ and the product thereof multiplied by a fraction, the numerator of which is 107 and the denominator of which is the number of months during which any contributions were made to the Participant's account (commonly known as the 'Hunt' formula)."

In 1992, William developed a vision impairment and was unable to continue working at his job as a truck driver. Accordingly, he began receiving disability payments pursuant to the Suburban Teamsters of Northern Illinois Pension Fund (pension plan). Thereafter, Peggy sought the entry of a qualified domestic relations order (QDRO) that would require the pension plan to pay her 33.46% of William's disability benefits. The trial court entered the QDRO over William's objections, and William appeals.

## ANALYSIS

The primary issue on appeal is whether Peggy is entitled to a portion of William's disability benefits under the dissolution judgment. Our resolution of this issue requires an interpretation of the parties' dissolution judgment.

■ The same rules that apply to construing contracts apply to interpreting divorce decrees. *In re Marriage of Kekstadt*, 85 Ill. App. 3d 952, 407 N.E.2d 746 (1980). The main objective when construing a marital settlement agreement is to give effect to the purpose and intent of the parties at the time they entered into the agreement. *In re Marriage of Belk*, 239 Ill. App. 3d 806, 605 N.E.2d 86 (1992). Where the language of the judgment is clear and its meaning is unambiguous, courts must give effect to that language. *In re Marriage of Mateja*, 183 Ill. App. 3d 759, 540 N.E.2d 406 (1989). However, if the

judgment is ambiguous, the court must ascertain the intent of the parties by examining the facts and circumstances surrounding the formation of the agreement. *In re Marriage of Olsen*, 229 Ill. App. 3d 107, 593 N.E.2d 859 (1992). A judgment is ambiguous if it is reasonably susceptible to more than one meaning. *In re Marriage of Druss*, 226 Ill. App. 3d 470, 589 N.E.2d 874 (1992). Because the interpretation of a contract is a question of law, a reviewing court may interpret the contract independently of the trial court's judgment. *In re Marriage of Kolb*, 99 Ill. App. 3d 895, 425 N.E.2d 1301 (1981).

■ The judgment at issue in the case at bar grants Peggy the right to receive a fraction of William's retirement benefits. However, William's pension plan provides disability benefits as well as retirement benefits, and the judgment does not identify which benefits Peggy is entitled to receive. It is thus reasonable to interpret the judgment as granting Peggy the right to receive a portion of any benefits William receives under the pension plan. However, it is also reasonable to interpret the judgment as limiting Peggy's interest in the pension plan to normal, age-related retirement benefits. Accordingly, the judgment is ambiguous, and we must examine the facts and circumstances surrounding the formation of the parties' marital settlement agreement to determine the parties' intent.

The settlement agreement refers to William's retirement plan, but it makes no reference to disability benefits. The absence of any reference to disability or disability benefits suggests that the parties did not contemplate such benefits at the time they entered the agreement.

Moreover, under William's pension plan, the normal retirement age is 60. When a union member becomes disabled, he is entitled to receive 75% of the retirement benefits he would have received if he had worked until age 60. Then, when he turns 60, he will receive the same retirement benefits he would have received upon age-related retirement. Thus, if William had not become disabled, he would have continued to receive his earned income until his retirement at age 60 and Peggy would not have received any benefits under the pension plan until William retired. However, due to William's disability, he is now unable to earn any income and must survive on the reduced income provided from his disability benefits.

To accept Peggy's interpretation of the agreement, we must find that the parties intended that if William suffered a disabling injury or illness and had to take a devastating reduction in his means of support then Peggy would enjoy a concomitant windfall. If we accept William's proposed interpretation, Peggy will receive the same benefits she would have received if William had continued working

until age 60, while William will receive disability benefits as a substitute for his earned income. Because Peggy's proposed interpretation of the agreement leads to an unfair and unreasonable result, we cannot conclude that the parties intended that she receive a portion of William's disability benefits. See *Camp v. Hollis*, 332 Ill. App. 60, 74 N.E.2d 31 (1947) (where contract is susceptible of two constructions, interpretation that makes a rational and probable agreement is favored).

Our conclusion is bolstered by *In re Marriage of Belk*, 239 Ill. App. 3d 806, 605 N.E.2d 86 (1992). When faced with an almost identical fact pattern, the *Belk* court concluded that a wife was not entitled to share in her husband's disability benefits. *Belk*, 239 Ill. App. 3d at 812, 605 N.E.2d at 90-91. In that case, the judgment provided that the wife would receive a portion of the husband's pension. *Belk*, 239 Ill. App. 3d at 807, 605 N.E.2d at 87. As in the case at bar, the husband's pension plan provided for disability benefits, but the judgment did not refer to these benefits. *Belk*, 239 Ill. App. 3d at 807, 605 N.E.2d at 87. The court held that the absence of any reference to disability benefits in the parties' settlement agreement was persuasive that such benefits were not contemplated by the parties. *Belk*, 239 Ill. App. 3d at 809-10, 605 N.E.2d at 88-89. In addition, the court held that it was unreasonable to conclude that the parties intended to grant the wife a portion of the husband's reduced income after he became disabled when she would not have received any benefits if her husband had continued working. *Belk*, 239 Ill. App. 3d at 810-11, 605 N.E.2d at 89. Because we find the *Belk* case persuasive, we similarly hold that Peggy is entitled to receive a fractional share of William's retirement benefits only when he begins to receive his normal, age-related retirement benefits. Accordingly, we reverse the judgment of the trial court and remand for the entry of an order modifying the QDRO to conform to our holding.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed and remanded.

Reversed and remanded.

HOMER and MICHELA, JJ., concur.