# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Farrell*, 2017 IL App (1st) 170611

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JOANNE FARRELL, f/k/a Joanne Farrell Howe, Petitioner-Appellant, and THOMAS HOWE, Respondent-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-17-0611 |
| Filed | December 29, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-D-11344; the Hon. Nancy J. Katz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Offices of Paul L. Feinstein, Ltd., of Chicago (Paul L. Feinstein, of counsel), for appellant.<br><br>Dussias Skallas Wittenberg Koenigsberger, LLP, of Chicago (Judd Z. Fineberg, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion.<br>Justices Lampkin and Rochford concurred in the judgment and opinion. |

## OPINION

¶ 1 Petitioner Joanne Farrell (Joanne) filed a petition to dissolve her marriage to respondent Thomas Howe (Thomas), and the circuit court entered a judgment dissolving the marriage, which incorporated a marital settlement agreement signed by the parties. The marital settlement agreement provided that the parties would split the marital portion of Thomas' pension from the Fireman's Annuity and Benefit Fund (fireman's fund) equally.[1] Thereafter, Thomas was injured while on active duty as a City of Chicago firefighter and began collecting disability benefits under the fireman's fund. Joanne then filed a petition to enforce the marital settlement agreement and requested that Thomas be ordered to split his disability benefits with her in accordance with the agreement. The circuit court denied Joanne's request. On appeal, Joanne argues that the circuit court erred when it determined that the marital settlement agreement was unambiguous and did not require Thomas to split his disability benefits with her. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3 Thomas and Joanne were married in 1990 with Thomas being employed as a firefighter for the City of Chicago during their marriage. After 19 years of marriage, Joanne filed a petition for dissolution, alleging irreconcilable differences as the reason for the dissolution. An agreed judgment of dissolution was entered by the parties in January 2010, which incorporated the parties' marital settlement agreement. The relevant portion of the agreement, section 3.1(d), provided that Joanne would receive one half of the marital portion of Thomas' pension and stated as follows:

> "The WIFE shall receive the specific property allocated to her in accordance with exhibit A, *** This distribution includes the execution of a QILDRO awarding 1/2 of the marital portion of HUSBAND's pension from the FIREMAN's ANNUITY AND BENEFIT FUND, and a QDRO conveying HUSBAND's complete interest to WIFE in his Deferred Compensation Plan as of the date of Judgment. Until the date of final approval of the above QDRO and QILDRO, the WIFE shall remain as the beneficiary of these plans to the extent of the interests granted to here in this paragraph." (Emphasis added.)

Section 3.2(d) further provided:

> "The HUSBAND shall retain all the remaining interest in the FIREMAN'S ANNUITY AND BENEFIT FUND not conveyed above."[2]

Exhibit A provided that the net value of "Thomas's Firemen's Pension" was $778,957 and that Joanne was entitled to $389,479. Joanne also waived "any and all claims" against Thomas for maintenance, alimony, and spousal support, whether past, present, or future.

---

[1]We acknowledge that article 6 of the Pension Code provides that the term "Fireman" used in the article "includes the female gender" and applies "with equal force to female firemen and their survivors." 40 ILCS 5/6-106.1 (West 2016).

[2]The Fireman's Annuity and Benefit Fund is governed by article 6 of the Pension Code (40 ILCS 5/6-101 to 6-229 (West 2016)).

¶ 4   Subsequently, in November 2013, Thomas was injured on the job, placed on active-duty disability leave, and as a result, began receiving disability benefits. In June 2016, Joanne filed a petition for rule to show cause to enforce the judgment of dissolution (petition) arguing that she was entitled to one-half of Thomas's disability benefits.

¶ 5   In his response to the petition, Thomas agreed that section 3.1(d) provided Joanne with a one-half interest in his fireman's annuity but maintained that disability benefits were not part of Joanne's marital property distribution. Thomas explained that he was 61 years old and had not yet retired. Thomas stated that when he attains the age of 63, the mandatory age for retirement, he would begin receiving his fireman's annuity, which would be divided with Joanne in accordance with the agreement. Until then, Thomas asserted that the disability benefits are not a retirement benefit but an income replacement to which Joanne was not entitled under the marital settlement agreement.

¶ 6   Thomas further argued that the language of the agreement as a whole demonstrated that the parties did not intend to split his disability benefits. Thomas noted that disability benefits are not allowed to be divided by a qualified domestic relations order, yet the marital settlement agreement provided that Joanne's interest in his pension was to be transferred exclusively by a qualified domestic relations order. Thomas also observed that the marital settlement agreement did not contain any reference to "disability benefits" and that exhibit A placed a present value on Thomas's fireman's annuity. In addition, Thomas asserted that Joanne waived her right to any maintenance and that requiring him to split his disability benefits would be the equivalent to awarding her maintenance. In sum, Thomas concluded that the marital settlement agreement clearly set forth the parties' intent that Joanne was to receive 50% of the marital portion of his fireman's annuity, not of his disability benefits, which he receives in lieu of income until his mandatory retirement at age 63.

¶ 7   In reply, Joanne denied that the parties intended to exclude Thomas's disability benefits from allocation and asserted she had a right to Thomas's "disability pension." Joanne contended that Thomas had submitted paperwork to the City of Chicago fire department in October 2013, prior to his injury, indicating his plan to retire in December 2014. She further maintained that Thomas informed her that he had attended a retirement planning session and informed her that she would be receiving $1857 per month. Joanne also indicated that Thomas told her he would pay her a portion of his disability payments until "the retirement annuity rule was triggered at age 63." According to Joanne, Thomas informed her that he had a choice between retiring and receiving disability benefits but that he chose disability benefits because he would receive 75% to 85% of his salary tax free along with free health care.

¶ 8   After hearing arguments, the circuit court ultimately concluded as a matter of law that the marital settlement agreement was unambiguous and ruled that Joanne was not entitled to any disability benefits. In doing so, the circuit court noted that at the time Thomas was 61 years of age and had elected to receive his disability benefits until age 63, at which time he would be eligible to receive his fireman's annuity. Accordingly, Thomas was not receiving a "disability *pension*" but a "disability *benefit*," and under the terms of the marital settlement agreement, Joanne was not entitled to a portion of that benefit. This appeal follows.

¶ 9                                          ANALYSIS

¶ 10   On appeal, Joanne argues that the circuit court erred when it determined the marriage settlement agreement was unambiguous and denied her petition. In the alternative, Joanne

contends that section 3.1(d) is ambiguous in that the term "pension" also relates to the disability benefits that Thomas is currently receiving even though he has not retired. According to Joanne, the circuit court's interpretation of the marriage settlement agreement leads to an absurd result, *i.e.* that she is precluded from receiving 50% of the marital portion of a significant asset, the "disability pension." Joanne requests that this court either rule (1) she is unambiguously entitled to one-half of the marital portion of Thomas's disability benefits, or (2) the parties' marital settlement agreement is ambiguous as a matter of law and remand the matter for further proceedings.

¶ 11 In response, Thomas sets forth that the circuit court correctly found that section 3.1(d) was not ambiguous and that Joanne is only entitled to one-half of the marital portion of his fireman's annuity upon his retirement and not his disability benefits, which he receives in lieu of active-duty compensation.

¶ 12 In this case, the parties' marital settlement agreement was incorporated into the judgment of dissolution. A judgment of dissolution and marital settlement agreement are to be construed as a single agreement. *In re Marriage of Frank*, 2015 IL App (3d) 140292, ¶ 11. It is well settled that the rules of contract construction are applicable to the interpretation of a marital settlement agreement and that a court's primary objective is to give effect to the intent of the parties. *In re Marriage of Hendry*, 409 Ill. App. 3d 1012, 1017 (2011). Where the language of the agreement is clear and its meaning is unambiguous, intent must be determined solely from the agreement's language and courts must give that language such effect. *In re Marriage of Davis*, 286 Ill. App. 3d 1065, 1066 (1997). An ambiguity exists where the language of an agreement is susceptible to more than one reasonable interpretation. *Id.* at 1067. When an agreement is ambiguous, the court may hear parol evidence to ascertain the intent of the parties. *In re Marriage of Dundas*, 355 Ill. App. 3d 423, 426 (2005). This court reviews a circuit court's interpretation of a marital settlement agreement *de novo. Frank*, 2015 IL App (3d) 140292, ¶ 12.

¶ 13 Before interpreting the settlement agreement, we first examine the Illinois Pension Code (Pension Code) (40 ILCS 5/6-101 to 6-229 (West 2016)), which governs the parties' marital settlement agreement and establishes the firemen's fund at issue. The Pension Code includes two separate articles that are applicable to firemen depending on the size of the municipality they serve. Article 4 of the Pension Code, titled "Firefighters' Pension Fund" (40 ILCS 5/4-101 to 4-144 (West 2016)), is applicable to municipalities with a population of 500,000 and under. In contrast, article 6 of the Pension Code, titled "Fireman's Annuity and Benefit Fund" (40 ILCS 5/6-101 to 6-229 (West 2016)), is applicable to municipalities with a population of over 500,000. As Thomas was employed by the City of Chicago, a municipality with a population of over 500,000, article 6 of the Pension Code governs here.

¶ 14 Article 6 of the Pension Code provides a retirement "annuity" for eligible firefighters. 40 ILCS 5/6-124.1 (West 2016). An "annuity" is defined as "[a]nnual payments for life." 40 ILCS 5/6-116 (West 2016). Pursuant to article 6, the compulsory retirement age is the "age set by law or ordinance beyond which the fireman is prohibited from working as a fireman." 40 ILCS 5/6-113 (West 2016). In this instance, the mandatory retirement age for those firefighters employed with the City of Chicago is 63. Chicago Municipal Code § 2-152-410(b), (d) (amended Mar. 1, 2006) ("the age of 63 shall be the maximum age for employment of any member of the uniformed service of the fire department").

¶ 15    Article 6 further provides that an active fireman who becomes disabled while on duty, as was Thomas, "shall have the right to receive [a] duty disability benefit during any period of such disability for which he does not receive or have a right to receive salary." 40 ILCS 5/6-151 (West 2016). The "[d]uty disability benefit shall be payable during the period of the disability until the fireman reaches the age of compulsory retirement." *Id.* Article 6 is clear that when a City of Chicago firefighter is disabled in the line of duty, he or she is eligible for disability benefits until he or she reaches the age of 63. *Id.*

¶ 16    The question before us is whether Joanne is entitled to a portion of Thomas's duty disability benefits where section 3.1(d) provides for a division of Thomas's pension from the fireman's fund, even though he is not retired and both benefits are governed by article 6 of the Pension Code. We conclude the marital settlement agreement is unambiguous and the parties intended that Joanne receive a portion of Thomas's fireman's annuity upon his retirement but not of his duty disability benefits taken prior to his retirement.

¶ 17    We reach this conclusion for several reasons. First, our primary objective is to give effect to the intent of the parties and because the terms of the agreement are clear and unambiguous, Joanne and Thomas's intent must be solely determined from the agreement's language. *Hendry*, 409 Ill. App. 3d at 1017; *Davis*, 286 Ill. App. 3d at 1066. Section 3.1(d) of the marital settlement agreement provided that the parties evenly split "the marital portion of HUSBAND's pension from the FIREMAN'S ANNUITY AND BENEFIT FUND." The parties' decision to use the word "pension" demonstrates their intent that this portion of the marital settlement agreement covered those funds received upon Thomas's retirement. At the time the agreement was executed, Thomas had not yet reached the mandatory retirement age and the agreement did not require Thomas to retire earlier. The agreement also did not provide for, nor mention, any disability benefits. More importantly, the marital settlement agreement stated that Thomas retained "all the remaining interest in the Fireman's Annuity Fund not conveyed" in section 3.1(d). As evidenced by the language of the marital settlement agreement, the parties' intent was for Joanne to receive half of Thomas's retirement benefits, not the duty disability benefits Thomas is currently receiving prior to his retirement.

¶ 18    Moreover, the parties' intent is further evidenced by the provision of the marital settlement agreement, which explicitly provides that Joanne "shall receive an allocation of property as set forth in exhibit A." Exhibit A lists "Thomas' Firemen's Pension" as a marital asset and defines the net value and amount Joanne would receive of that asset. There is no indication that this calculation included any disability benefits Thomas may receive prior to his retirement.

¶ 19    Additionally, under the settlement agreement, Joanne waived any claims of maintenance or spousal support. In doing so, she relinquished her right to a portion of Thomas's income or Thomas's duty disability benefit, which replaces his income. See 40 ILCS 5/6-151 (West 2016). As aptly stated in *In re Marriage of Belk*, "The parties had the right to enter into an agreement with regard to the division of any of their property. [Citation.] That they failed to make provision for disability benefits received by [the ex-husband] does not justify the court in adding such a term to their agreement. Courts cannot rewrite contracts to suit either party but must enforce the contract terms as written." *In re Marriage of Belk*, 239 Ill. App. 3d 806, 812 (1992).

¶ 20    Accordingly, the marital settlement agreement's reference to Thomas "pension" does not include the duty disability benefits he receives prior to his retirement. See *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123, 1126 (2008). We thus conclude that the circuit court did not err

when it determined the marital settlement agreement was unambiguous and that the duty disability benefits Thomas currently receives are not part of his "pension."

¶ 21    The parties rely on numerous cases in support of their positions on appeal. Joanne relies on the Third and Fourth District cases of *Schurtz*, 382 Ill. App. 3d 1123, *In re Marriage of Benson*, 2015 IL App (4th) 140682, and *In re Marriage of Marshall*, 166 Ill. App. 3d 954 (1988). Thomas, however, relies on the cases of *Belk*, 239 Ill. App. 3d 806, and *Davis*, 286 Ill. App. 3d 1065, of the Second and Third Districts, respectively. These cases interpret various marital settlement agreements and determine whether the pertinent disability payments are covered by provisions relating to retirement or pension benefits. The interpretation of a marital settlement agreement is fact specific. Accordingly, no single case will be dispositive. We therefore conclude that none of these cases are determinative of the outcome in the case at bar as they were decided under different facts and different applicable statutory provisions. See *Schurtz*, 382 Ill. App. 3d at 1126 (applying article 4 of the Pension Code); *Benson*, 2015 IL App (4th) 140682, ¶ 26 (applying article 4 of the Pension Code); *Marshall*, 166 Ill. App. 3d at 957 (involving a military pension under Title 10 of the United States Code (10 U.S.C. § 8911 (1982)); *Belk*, 239 Ill. App. 3d at 811 (referencing article 3 of the Pension Code (police officers in municipalities of less than 500,000 individuals)); *Davis*, 286 Ill. App. 3d at 1066 (involving the Suburban Teamsters of Northern Illinois Pension Fund). These cases do, however, offer some guidance and support for our conclusion that because section 3.1(d) does not refer to disability benefits (*Davis* and *Belk*), Thomas's disability payments do not replace his income and are not a substitution for retirement benefits (*Schurtz* and *Benson*) and therefore Joanne is not entitled to a share of those payments.

¶ 22    The most important distinction between the cases cited by the parties and the present matter is that here Thomas's retirement benefits are governed by article 6 of the Pension Code. See 40 ILCS 5/6-101 to 6-229 (West 2016). For example, while the applicable statutes in *Schurtz*, *Benson*, and *Belk* provided for two different types of pensions, a "retirement pension" and a "disability pension," article 6 does not contemplate different types of pensions. Compare 40 ILCS 5/3-101 to 3-152 (West 2016), 40 ILCS 5/4-101 to 4-144 (West 2016), and 40 ILCS 5/6-101 to 6-229 (West 2016). Instead, article 6 provides that when a fireman becomes disabled while on active duty, the fireman is entitled to disability benefits until he or she reaches the mandatory age of retirement (in this case age 63). Thereafter, the fireman shall receive such annuity as is provided for him in accordance with article 6. 40 ILCS 5/6-151 (West 2016). Accordingly, article 6 of the Pension Code does not allow a fireman to take disability benefits in lieu of an annuity. *Id.* When read in conjunction with article 6 of the Pension Code, the parties' marital settlement agreement is thus unambiguous; the term "Thomas' Firemen's Pension" only refers to those benefits he receives upon his retirement. Furthermore, article 6 of the Pension Code, which is incorporated into the marital settlement agreement, distinguishes between annuities and disability benefits. This is further evidence of the parties' intent that Joanne receives a portion of Thomas's annuity and not a portion of his duty disability benefit. See *State v. American Federation of State, County & Municipal Employees*, 2016 IL 118422, ¶ 53 (statutes and laws in existence at the time a contract is executed are considered part of the contract).

¶ 23    Joanne further argues on appeal that if we are to conclude that the provision in the settlement agreement allocating Thomas's pension does not include his disability benefits, the disability benefits fall under the "discovered property" provision of the marital settlement

- 6 -

agreement. Therefore, Joanne maintains she is nonetheless entitled to her portion of the assets. That provision of the agreement provides in pertinent part that if either party finds that he or she omitted any property from the property allocated in the agreement, then any such property shall be automatically divided and allocated as though it had been included in the allocation at the proper time.

¶ 24 Our review of the record reveals, however, that Joanne failed to raise this argument before the circuit court. "It is well settled that an unsuccessful party may not advance a new theory of recovery on appeal" (*In re Detention of Anders*, 304 Ill. App. 3d 117, 123 (1999)), and that doing so results in forfeiture of that issue (see, *e.g.*, *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14 (issues not raised in the trial court are forfeited); *Stuckey v. Renaissance at Midway, Inc.*, 2015 IL App (1st) 143111, ¶ 30 (finding it would be improper to address an argument raised for the first time on appeal)). "The purpose of this court's forfeiture rules is to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction." *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 14. Accordingly, we find this argument to be forfeited.

¶ 25                                                   CONCLUSION
¶ 26 For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 27 Affirmed.