2020 IL App (1st) 191337
No. 1-19-1337
Order filed June 8, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| *In re* MARRIAGE OF SULLIVAN, | Appeal from the Circuit Court of Cook County. |
| (JUANITA M. SULLIVAN, | |
| Petitioner-Appellant, | No. 06 D 05086 |
| and | |
| JOHN E. SULLIVAN, | The Honorable Jeanne R. Cleveland-Bernstein, Judge, presiding. |
| Respondent-Appellee). | |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pierce and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: After a marriage is dissolved and the parties agree in the marital settlement agreement to share pension benefits equally, an ex-wife does not have a present right to receive a portion of an ex-husband's "disability pension" benefits which he receives after becoming disabled but before he reaches regular retirement age.

¶ 2    After a 12 1/2-year marriage, petitioner Juanita Sullivan and respondent John Sullivan divorced. The trial court allocated all real and personal property, bank accounts, investment and retirement funds, and life insurance. Shortly afterwards, John was found to be totally disabled

and eligible for his Social Security Disability Benefit, which allowed him to receive a "disability pension" before reaching his normal retirement age. Juanita sought a portion of John's disability pension.

¶ 3        We affirm. The court properly held that in the marital settlement agreement intended the parties share equally in John's pension benefits, to which Juanita was entitled when John reached retirement age. Had John never become disabled, he would not be receiving any payments under a "disability pension." The plans Juanita refers to differentiate between a disability pension and a retirement pension, the latter being a "normal" pension, allowable at age 65.

¶ 4                                    Background

¶ 5        The judgment of dissolution of marriage incorporated the marital settlement agreement. John had an interest in (i) the Electrical Contractors' Association and Local Union 134, I.B.E.W. Joint Pension Trust of Chicago Pension Plan No. 5 defined contribution pension plan; (ii) the Electrical Contractors' Association and Local Union 134, I.B.E.W. Joint Pension Trust of Chicago Pension Plan No. 2 defined benefit pension plan; (iii) the IBEW Pension Benefit Fund defined benefit pension plan, and (iv) the National Electrical Benefit Fund defined benefit pension plan. The marital settlement agreement divided these plans equally between John and Juanita. After enumerating the plans, the agreement stated:

> "G. *** The aforementioned pension/retirement plans in this paragraph shall be divided as follows:
>
> 1. Pension Plan No. 5:  JUANITA shall receive an amount equal to Fifty (50%) of the following sum from his Pension Plan No. 5.
>
> 2. Pension Plan No. 2, IBEW Pension Benefit Fund plan and National Electrical Benefit Fund Plan:  JUANITA shall receive Fifty (50%) percent of the marital portion *** of his

(i) Pension Plan No. 2, (ii) IBEW Pension Benefit Fund plan, and (iii) National Electrical Benefit Fund plan to JUANITA, as valued on the date of entry of Judgment, as well as any income or losses relative to said amounts between the date of entry of Judgment herein and the date of transfer to JUANITA."

¶ 6 After the divorce had become final, John applied for Social Security Disability Income benefits as a precondition of receiving long-term disability insurance. After being awarded the SSDI, he was able to apply for "disability pension" benefits under the pension plans. John began receiving "disability pension" benefits from I.B.E.W. Joint Pension Trust of Chicago Pension Plan No. 2 Defined Benefit Pension Plan, and the National Electrical Benefit Fund Defined Benefit Pension Plan. Months later, Juanita learned that John was receiving these benefits and petitioned the trial court for a portion of them, arguing she was entitled to half of the payments under the marital settlement agreement. John argued the parties contemplated Juanita would receive a 50% interest in his retirement pension, not his disability income, and that Juanita was not entitled to any share of the disability pension benefits because those benefits were income replacement.

¶ 7 After a hearing, the trial court ruled that John's disability pension from the Electrical Insurance Trustees Health & Welfare Plan for Construction Workers Pension Plan 2 was income replacement as opposed to a pension as contemplated by the parties in the marital settlement agreement. Juanita appealed, and in an unpublished Rule 23 Order, this court held that the trial court properly determined that Juanita was not entitled to any portion of the disability pension benefits. *Sullivan v. Sullivan*, 1-17-0446, Rule 23 Order (June 4, 2018). Relying on *In re Marriage of Belk*, 239 Ill. App. 3d 806, 808 (1992), and *In re Marriage of Davis*, 266 Ill. App. 3d 1065, 1067 (1997), this court found the parties "agreed to divide pension benefits, with the

understanding that the pension benefits would be available for retirement, not for any potential disability." *Sullivan,* 1-17-0446, ¶ 16. The issue pertained to the "disability pension benefit" payments John was receiving under the "Electrical Insurance Trustees Health & Welfare Plan for Construction Workers" Pension Plan No. 2 until he began receiving pension payments after either taking an early retirement or reaching the "normal" retirement age of 65.

¶ 8    Thereafter, John moved to modify the Qualified Domestic Relations Order for his International Brotherhood of Electrical Workers Pension Benefit Fund. The trial judge approved the amended QDRO provided that when John "goes into payment status," Juanita would receive one-half of the monthly benefit earned by John during the marriage. Regarding "Disability Retirement Benefits," the order specifically excluded payments made to John "on account of [his] disability prior to [his] attainment of the earliest retirement age." Juanita also was ordered to pay $1,755 to John as reimbursement for payments she already received and $2,000 to his lawyers for fees. The trial court denied Juanita's motion for reconsideration.

¶ 9    Juanita appeals the order granting John's motion to modify the Qualified Domestic Relations Order and for turnover of funds, and the denial of Juanita's Motion to Reconsider.

¶ 10                                Standard of Review

¶ 11    We review the interpretation of a marital settlement *de novo* as a question of law. *In re Marriage of Farrell & Howe*, 2017 IL App (1st) 170611, ¶ 21. The rules of contract construction apply and the court's primary objective in interpreting the terms of a marital settlement agreement is to give effect to the intent of the parties. *Id*. ¶ 12.

¶ 12                                    Analysis

¶ 13    On March 12, 2020, this court entered an order taking the case on Juanita's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)

(allowing consideration of appeal on appellant's brief only where record is simple and errors can be considered without additional briefing).

¶ 14      In our analysis, the intent of the parties is paramount. See *Belk*, 239 Ill. App. 3d at 808 (interpreting marital settlement agreement). Courts must "discover and give effect to the intent of the parties at the time they entered into the contract." *Id.*

¶ 15      Certainly, pension benefits are marital property. Section 503(b)(2) of the Illinois Marriage and Dissolution of Marriage Act addresses the disposition of property and debts and defines pension benefits as marital property and makes no mention of disability benefits. See 750 ILCS 5/503(b)(2) (West 2008)) ("[A]ll pension benefits (including pension benefits under the Illinois Pension Code, defined benefit plans, defined contribution plans and accounts, individual retirement accounts, and non-qualified plans) acquired by or participated in by either spouse after the marriage and before a judgment of dissolution of marriage or legal separation or declaration of invalidity of the marriage are presumed to be marital property.").

¶ 16      Juanita contends "[t]he omission of disability benefits cannot be construed as a reflection of the parties' intent to exclude these benefits, as disability benefits are a component of [John]'s retirement benefits." Juanita argued to the trial court that the disability determination for Social Security Disability Benefits meant that John was actually retired and, under their marital settlement agreement, she was entitled to one-half of his disability pension. This argument ignores the benefit plans' requirement that John had to apply for Social Security to receive disability payments under his benefit plans that labeled these payments "disability pension."

¶ 17      At the hearing on the motion to modify the QDRO, John argued "if it was intended for Mrs. Sullivan to receive part of his disability pension that replaced income, it would have said so in the judgment because he was already receiving it at that time." This argument is well-taken.

For example, in *Belk*, neither "disability benefits" nor "disability retirement" or "disability pension" was mentioned by the parties *Belk*, 239 Ill. App. 3d at 808. The absence of an express or even implied reference to disability or disability benefits persuaded the *Belk* court that the parties did not contemplate benefits at the time of dissolution. *Id*. at 809-10.

¶ 18    In another analogous case, *Davis*, 286 Ill. App. 3d 1065, the parties' divorce judgment referenced a division of the husband's retirement benefit plans but made no mention of disability benefits payable under the same pension plan. The *Davis* court followed the *Belk* decision, noting "[t]he absence of any reference to disability or disability benefits suggest that the parties did not contemplate such benefits at the time they entered the agreement. *Id*. at 1067. *Davis* characterized the wife's portion a "windfall" should the husband be injured and go on disability.

¶ 19    Further supporting our decision is *Farrell & Howe*, 2017 IL App (1st) 170611. The 61-year-old ex-husband elected to receive disability benefits until age 63 when he would be eligible for his fireman's annuity. *Id*. ¶ 5. This court affirmed the trial court's finding that as a matter of law the marital settlement agreement unambiguously referred to the "pension" that the ex-husband would begin to receive when he retired. *Id*. ¶ 1. The ex-wife was not entitled to a portion of his disability benefits until then. *Id*. ¶ 20.

¶ 20    Although *In re Marriage of Sawicki*, 346 Ill. App. 3d 1107 (2004), and *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123 (2008), held an equal division of the ex-husband's "disability pension" was proper, both cases are factually distinguishable. In both *Schurtz* and *Sawicki*, the ex-husband was of retirement age and entitled to receive a pension.

¶ 21    In *Sawicki*, the ex-husband became disabled during the marriage and, at the time of the divorce, was receiving a disability pension. *Sawicki*, 346 Ill. App. 3d at 1115. After lengthy dissolution proceedings, the trial court awarded each party half of the pension. *Id*. On appeal, the

addressed multiple issues but not the terms of a settlement agreement. Instead, section 503(d) factors pertaining to the division of marital property were determinative. *Id*. at 1114.

¶ 22       In *Schurtz*, the parties' settlement agreement did not refer to disability benefits in addressing the husband's retirement benefits, but the ex-husband was entitled to retirement pay and receiving disability income. *Schurtz*, 382 Ill. App. at 1126. When a party is entitled to receive retirement pay and receiving disability income instead, a settlement agreement providing the other spouse a portion of retirement benefits may be reasonably interpreted as requiring that the other spouse be paid the percentage of what would be the normal retirement benefits, whether paid as normal retirement benefits or disability benefits. *Id*.

¶ 23       We conclude that the portion of the pension awarded to Juanita in the dissolution was not intended for current support but for when John reaches his retirement, as was stated by this court in the earlier unpublished Rule 23 Order. *Sullivan*, 1-17-0446, Rule 23 Order (June 4, 2018).

¶ 24       Finally, we note that in her motion for reconsideration Juanita accused John of perjury because he represented his "disability pension" was not a pension. The accusation is meritless. John was pursuing his legal argument, not perjuring himself. The benefit plans are distinct: "normal," "early," or "disability" pensions. Juanita conflates the three types of plans and declares John "retired and began receiving his pension benefits."

¶ 25       Affirmed.